UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIAZAR SANCHEZ, on behalf of himself and all others similarly situated,<br><br>                Plaintiff,<br><br>        v.<br><br>FRITO-LAY, INC.,<br><br>                Defendant. | No.  1:14-cv-00797-DAD-MJS<br><br><br>ORDER DENYING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CONDITIONAL CLASS CERTIFICATION<br><br>(Doc. No. 20) |

        This putative class action arises from alleged violations of California wage and hour laws relating to maintenance mechanics.  Before the court is plaintiff's unopposed motion for preliminary settlement approval and conditional class certification.  (Doc. No. 20.)  On May 3, 2016, this matter came before the court for hearing.  Attorney Jerusalem Beligan appeared on behalf of plaintiff Eliazar Sanchez.  Attorney Ashley Hirano appeared on behalf of defendant Frito-Lay, Inc. ("Frito-Lay").  For the reasons stated below, plaintiff's motion will be denied.

## BACKGROUND

**A.    Procedural History**

        Plaintiff Eliazar Sanchez filed this putative class action in state court on April 11, 2014. The complaint states ten causes of action under California law:  (1) failure to pay regular hourly wages, (2) failure to pay overtime wages, (3) failure to pay the correct overtime rate of pay, (4)

1

1   failure to pay premium wages for denial of meal and rest periods, (5) failure to pay vested

2   vacation wages, (6) illegal deductions of vested vacation wages, (7) breach of contract for failure

3   to pay vested wages, (8) failure to pay final wages due upon termination, (9) failure to provide

4   accurate itemized wage statements, and (10) violations of California Unfair Competition Law.

5   (Doc. No. 1-3.)  The putative class comprises non-exempt hourly employees of defendant, the

6   owner and operator of distribution centers throughout California.  Plaintiff generally alleges that

7   defendant Frito-Lay implemented policies and practices that resulted in the alleged violations of

8   employment laws.  On May 23, 2014, defendant Frito-Lay removed the case to this court.  (Doc.

9   No. 1.)

10      After the class action was filed, class counsel investigated the claims further and

11   determined that the contemplated class needed to be narrowed to cover only alternative work

12   week employees (e.g., those working four ten-hour days a week) in the position of "Maintenance

13   Mechanic."  (Doc. No. 20-2 ¶ 11.)  Accordingly, plaintiff proceeded on two primary allegations

14   related to these employees.  First, plaintiff alleges defendant Frito-Lay engaged in a company-

15   wide practice by which employees were denied a second meal period for every shift of ten or

16   more hours.  Second, plaintiff alleges Frito-Lay's company-wide practice and written rest break

17   policy failed to authorize and permit a third rest break for shifts of ten or more hours.

18      After submitting to mediation, the parties executed a settlement agreement.  (*See* Doc. No.

19   9-3.)  On December 11, 2014, plaintiff filed an unopposed motion for preliminary approval of the

20   class action settlement and conditional certification of the class.  (Doc. No. 9.)  On January 30,

21   2015, the matter was presented before the assigned magistrate judge for a hearing.  (Doc. No. 11.)

22   The parties were directed by the magistrate judge to file supplemental briefing regarding a

23   number of perceived deficiencies in the motion.  (*See id*.)  On August 5, 2015, the assigned

24   magistrate judge issued findings and recommendations recommending that the motion be denied

25   after concluding that plaintiff failed to provide sufficient information to establish a class or to

26   permit a determination that the proposed settlement falls within the range of possible approval.

27   (Doc. No. 16.)  The then-assigned district judge adopted those findings and recommendations and

28   denied plaintiff's motion.  (Doc. No. 17.)

On December 4, 2015, this case was reassigned to the undersigned.  (Doc. No. 18.)  On January 14, 2016, plaintiff filed a renewed motion for preliminary approval and conditional class certification in response to the court's findings and included additional factual evidence supported by declarations of plaintiff Sanchez and his counsel.  (Doc. No. 20.)  On February 16, 2016, the matter came before the undersigned for hearing.  At that hearing, the court noted that plaintiff's motion did not fully address the court's previously expressed concerns.  The matter was continued for further hearing, and on April 19, 2016, plaintiff filed supplemental briefing and a revised settlement agreement in response to the modifications to the settlement terms suggested by the court at the February 16, 2016 hearing.  (Doc. No. 27.)

**B.      The Proposed Amended Settlement Agreement**

In response to the court's concerns, the parties executed an amended settlement agreement ("Amended Settlement").  (Doc. No. 27-2.)  The Amended Settlement includes the following key provisions:

Class Definition (Amended Settlement § VIII.2).  For settlement purposes, the class is defined as "all present and former employees of Frito-Lay, Inc. in the State of California who have held the title of Maintenance Mechanic or any similar position at any point between April 11, 2010, and March 10, 2015."

Settlement Fund (Amended Settlement § VIII.5).  The parties agree to establish a settlement fund of $600,000.00, inclusive of attorney's fees, costs, and expenses; the incentive payment to the named plaintiff; payment to the Labor Workforce Development Agency; and all costs of administration, including settlement administration fees.

Attorneys' Fees and Costs (Amended Settlement § VIII.6).  The Amended Settlement authorizes an award of up to $150,000.00 to class counsel in attorney's fees, which represents 25% of the total settlement fund.  The Amended Settlement further authorizes an award of up to $20,000.00 to class counsel for costs.

Incentive Payment (Amended Settlement § VIII.8).   The Amended Settlement authorizes an award of up to $7,500.000 to the named plaintiff as an incentive award.

/////

3

Allocation Method (Amended Settlement § VIII.7).  After deducting amounts for awards for fees, costs, incentive payment, PAGA payment, and claims administration expenses, the remaining fund will be allocated to settlement class members, which include those class members who submit a timely and properly completed claim form.  The payout fund will be distributed based on the number of weeks each plaintiff worked as a Maintenance Mechanic during the applicable period.  This figure is inclusive of the weeks worked by class members who have opted out or have not submitted claim forms.

Releases (Amended Settlement § VIII.3).  "Class Members" (those who have not requested exclusion from the class) shall fully and finally release Frito Lay of any and all state law claims.  "Settlement Class Members" (only those who return a claim form) also release Frito Lay of any and all federal law claims.

Unclaimed Settlement Funds (Amended Settlement § VIII.7(b)(iii)).  All unclaimed settlement funds will be first used to pay any employer-owed payroll tax obligations arising from the payments made under the settlement agreement.  Any remaining funds will be distributed *cy pres* to the United Way, with 50% of that distribution to be earmarked for a veterans' organization affiliated the United Way, if practicable.

**LEGAL STANDARD & PROCESS FOR APPROVAL OF CLASS SETTLEMENTS**

"Courts have long recognized that settlement class actions present unique due process concerns for absent class members."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citation and internal quotations omitted).  To protect the rights of absent class members, Rule 23(e) of the Federal Rules of Civil Procedure requires the court approve all class action settlements "only after a hearing and on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *Bluetooth*, 654 F.3d at 946.  However, it has been recognized that when parties seek approval of a settlement agreement negotiated *prior* to formal class certification, "there is an even greater potential for a breach of fiduciary duty owed the class during settlement."  *Bluetooth*, 654 F.3d at 946.  Thus, the court must review such agreements with "a more probing inquiry" for evidence of collusion or other conflicts of interest than what is normally required under the Federal Rules.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th

1    Cir. 1998); *see also Bluetooth*, 654 F.3d at 946.

2        When parties seek class certification for settlement purposes only, Rule 23 "demand[s]

3    undiluted, even heightened, attention" to the requirements for certification.  *Amchem Prods., Inc.*

4    *v. Windsor*, 521 U.S. 591, 620 (1997).  Although here the parties do not dispute that the class

5    exists for the purposes of settlement, the district court must examine the propriety of certification

6    under Rule 23 both at this preliminary stage and at a later fairness hearing.  *See, e.g.*, *Ogbuehi v.*

7    *Comcast*, No. 2:13-cv-00672-KJM-KJN (E.D. Cal. Oct. 2, 2014); *West v. Circle K Stores, Inc.*,

8    No. 04-cv-0438 WBS GGH, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006).

9        Review of a proposed class action settlement ordinarily proceeds in three stages.  *See*

10   Manual for Complex Litigation (4th) § 21.632.  First, the court conducts a preliminary fairness

11   evaluation and, if applicable, considers conditional class certification.  *Id.*  Second, if the court

12   makes a preliminary determination on the fairness, reasonableness, and adequacy of the

13   settlement terms, the parties are directed to prepare the notice of certification and proposed

14   settlement to the class members.  *Id.*  Third, the court holds a final fairness hearing to determine

15   whether to approve the settlement.  *Id.; see also Narouz v. Charter Commc'ns, Inc.*, 591 F.3d

16   1261, 1266–67 (9th Cir. 2010).

17                                          **DISCUSSION**

18       Plaintiff asks this court to make a preliminary finding of fairness, reasonableness, and

19   adequacy as to the Amended Settlement.  For the reasons set forth below, the court concludes

20   plaintiff has failed to establish that the Amended Settlement is fair or reasonable in light of the

21   evidence before the court.

22       To assess the fairness of a settlement under Rule 23(e), district courts generally should

23   weigh

24           (1) the strength of the plaintiff's case; (2) the risk, expense,
             complexity, and likely duration of further litigation; (3) the risk of
25           maintaining class action status throughout the trial; (4) the amount
             offered in settlement; (5) the extent of discovery completed and the
26           stage of the proceedings; (6) the experience and views of counsel;
             (7) the presence of a governmental participant; and (8) the reaction
27           of the class members of the proposed settlement.

28

                                              5

1    *Bluetooth*, 654 F.3d at 946 (citing *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th

2    Cir. 2004).  Prior to formal class certification, a preliminary fairness determination is appropriate

3    "[i]f the proposed settlement appears to be the product of serious, informed, non-collusive

4    negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to

5    class representatives or segments of the class, and falls within the range of possible approval." *In*

6    *re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

7        In denying plaintiff's original motion for preliminary settlement approval, the court noted

8    as follows:

9
10
11
12
13
> Plaintiffs' assumed violation rate is further illustrative of the
> inadequacy of Plaintiffs' submission; this Court cannot satisfy its
> obligation to determine the fairness of the settlement agreement on
> behalf of the absent putative class members without requiring proof
> of a violation rate based on something more than Plaintiffs'
> conclusion.  A full explanation of Defendant's relevant employment
> policies complimented by an explanation of *how* and *how often* they
> impacted the putative class members would likely go far to resolve
> those issues.

14    (Doc. No. 17 at 2) (citation omitted).  Plaintiff has submitted additional information and

15    supplemental briefing in support of the instant motion.  While plaintiff has now addressed some

16    of the court's prior expressed concerns, counsel's explanation of how he determined a violation

17    rate in this case raises significant concerns about the reasonableness of the settlement value and

18    the degree to which the Amended Settlement was the product of serious and informed

19    negotiations.

20        In this regard, plaintiff argues that in the face of the risks inherent in further litigation, the

21    parties agreed to a compromise of $600,000.00, which represents roughly 44% of the

22    $1,366,089.60 in liability resulting from defendant's alleged failure to provide adequate meal

23    periods and rest breaks.  (Doc. No. 20-1 at 12–13.)  To establish a total value for plaintiff's meal

24    period and rest break claims, plaintiff's counsel describes his review and analysis of a random

25    sampling of time and payroll data of 31 of the 137 putative class members.  (Doc. No. 20-1 at 17–

26    18; *see also* Doc. Nos. 20-2 ¶¶ 12–17; 27 at 5.)  Based on this sampling, plaintiff determined that

27    class members routinely worked ten-hour shifts but took only one meal period and no more than

28    two rest breaks.  (Doc. No. 20-1 at 17.)  Plaintiff's counsel *assumed* that on average, putative

1  class members were subject to one meal period violation and one rest break violation per week.

2  (*Id.* at 18.)  Further, plaintiff's counsel calculated the total number of relevant workweeks by

3  multiplying the number of class members (137 class members) by the number of weeks in the

4  class period (241 weeks).  (*Id.*)   Based on pay stub data, plaintiff's counsel estimated that class

5  members worked an average 33.6 full-time weeks per year, or 65% of the year.  (*Id.*)  To obtain a

6  value for the claims at issue, plaintiff's counsel multiplied the assumed violation rate (1

7  violation/week), by the adjusted number of relevant workweeks (21,520 weeks),[1] by the average

8  hourly rate to be paid per violation ($31.74/violation).  (*Id.*; Doc. No. 27-1 ¶ 5.)  This resulted in a

9  value of $683,044.80 for each type of violation, and a total value of $1,366,089.60 for both meal

10  period and rest break violations.  (Doc. No. 27-1 ¶¶ 5–6.)

11         In response to the court's inquiry as to how plaintiff arrived at an assumed violation rate,

12  plaintiff's counsel provided additional information in his supplemental briefing.  (*See* Doc. No.

13  27.)  Therein, plaintiff's counsel explains that the sampling of pay stubs indicated an average rate

14  of two meal period violations and two rest break violations per week.  (Doc. No. 27-1 ¶¶ 5–6.)

15  Plaintiff's counsel multiplied this violation rate (2 violations/week) by 65%, based on reasoning

16  that putative class members worked 65% of the year, to arrive at a violation rate of 1.3 violations

17  per week.  (*Id.*)  Plaintiff's counsel then rounded this number down to the nearest whole number,

18  or one violation per week, to obtain an assumed violation rate.  (*Id.*)

19         Plaintiff's counsel's method for obtaining an assumed violation rate is perplexing at best,

20  for at least two reasons.  First, while it is certainly reasonable to adjust the number of relevant

21  workweeks by the average percentage of weeks actually worked, it is unclear why such an

22  adjustment needs to be made on a per-week violation rate as well.  Such an adjustment effectively

23  discounts plaintiff's total recovery value a *second* time.  Second, plaintiff's counsel provides no

24  explanation, in written submissions or at the further hearing on the pending motion, as to why the

25  adjusted violation rate (1.3 violations/week) needed to be rounded down to a whole number.  A

26

27  [1] Plaintiff's counsel states the adjusted number of relevant workweeks is 21,520.  The court notes
    that according to plaintiff's own figures, this number should apparently be 21,461.05 (i.e., 137 ×

28  241 × 0.65).

1  violation rate represents the average number of violations each putative class member suffered on

2  a weekly basis—not the actual number of real-world violations that occurred every week.   As a

3  result of counsel's discounting the violation rate (i.e., from two violations per week to one),

4  plaintiff's valuation of his claims was effectively reduced by half.  Thus, the parties' compromise

5  represents only 22% of the class's potential recovery.[2]

6        In light of the foregoing, this court cannot conclude that plaintiff has made an adequate

7  showing sufficient to warrant a preliminary finding that the proposed Amended Settlement is fair,

8  reasonable, and adequate.  Although it is true that a settlement agreement amounting to a low

9  percentage of the class's potential recovery does not render the agreement per se inadequate or

10  unfair, *see Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d

11  615, 628 (9th Cir. 1982),  plaintiff's counsel's miscalculations in this case raise significant

12  concerns on the part of the court about whether he adequately represented the interests of the

13  absent putative class members in settlement negotiations and the extent to which the Amended

14  Settlement is the product of a well-informed negotiation.  Procedurally, the parties appear to have

15  engaged in a good-faith effort to engage in arms-length, non-collusive negotiations.  However,

16  assuming plaintiff's counsel relied on a faulty valuation, he severely compromised any potential

17  recovery before arriving at the negotiating table and before the parties could account for other

18  factors, such as the strength of plaintiff's claims and the risks and expenses of continued

19  litigation.  Thus, the settlement value as proposed appears to represent an unnecessary and

20  unjustified discounting of plaintiff's claims.

21        Substantively, such an unjustified discounting of the putative class's claims presents a

22  clear deficiency in the Amended Settlement.  To address whether a proposed settlement is

23  substantively fair or adequate, courts must "consider plaintiffs' expected recovery balanced

24  against the value of the settlement offer."  *Tableware*, 484 F. Supp. 2d at 1080.  Here, the

---

25  [2]  Despite the concerns expressed by the court at hearing, plaintiff's counsel requested
26  preliminary approval of the Amended Settlement so that class members would be given notice
   and an opportunity to object to the settlement terms.  The court is unmoved by this suggestion as
27  plaintiff's proposed notices to class members provide no information as to plaintiff's valuation
   methodology.  In any event, given counsel's apparent confusion about his own calculations, it
28  would be unrealistic to expect class members to be able to raise such an issue in objections.

1  Amended Settlement provides 22% of the potential recovery value of the claims on which

2  plaintiff has chosen to proceed.  Without more, it is questionable that recovery under the

3  Amended Settlement is reasonable or "within the range of possible approval." *See id.* at 1079.

4  Moreover, under the terms of the Amended Settlement, all class members who do not

5  affirmatively exclude themselves from the litigation release all state claims against the defendant,

6  and class members who submit claim forms also waive their federal claims.  Plaintiff has failed to

7  make a preliminary showing that the value of the Amended Settlement is reasonable in light of

8  such a broad release provision.  Because the court cannot presume that such a settlement is

9  reasonable, the court denies preliminary approval.

10         Because the court denies preliminary approval of the proposed settlement, it also declines

11  to address whether plaintiff has provided sufficient information to certify the class for settlement

12  purposes.

13                                           **ORDER**

14         For the reasons set forth above,

15      1.  Plaintiff's motion for preliminary settlement approval and conditional class

16             certification (Doc. No. 20) is denied; and

17      2.  The matter is referred to the assigned magistrate judge for purposes of re-scheduling

18             further proceedings in this action.

19  IT IS SO ORDERED.

20  Dated:   __May 24, 2016__                    _____

21                                           UNITED STATES DISTRICT JUDGE

22

23

24

25

26

27

28

9