1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                  FOR THE EASTERN DISTRICT OF CALIFORNIA
10

| 11 | ELIAZAR SANCHEZ, on behalf of himself and all others similarly situated, | No. 1:14-cv-00797-DAD-MJS |
|---|---|---|
| 12 | Plaintiff, | |
| 13 | v. | ORDER DENYING RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CONDITIONAL CLASS CERTIFICATION |
| 14 | FRITO-LAY, INC., | |
| 15 | Defendant. | (Doc. No. 43) |

For a third time, plaintiff has sought preliminary settlement approval and conditional class certification. (Doc. No. 43.) On April 4, 2017, this matter came before the court for hearing. Attorney Jerusalem Beligan appeared on behalf of plaintiff Eliazar Sanchez, and attorney Samantha Hardy appeared on behalf of defendant Frito-Lay, Inc. ("Frito-Lay"). For the reasons stated below, plaintiff's motion will be denied once again.

**BACKGROUND**

Plaintiff Eliazar Sanchez filed this putative class action in state court on April 11, 2014, alleging the following causes of action under California law: (1) failure to pay regular hourly wages, (2) failure to pay overtime wages, (3) failure to pay the correct overtime rate of pay, (4) failure to pay premium wages for denial of meal and rest periods, (5) failure to pay vested

1

vacation wages, (6) illegal deductions of vested vacation wages, (7) breach of contract for failure to pay vested wages, (8) failure to pay final wages due upon termination, (9) failure to provide accurate itemized wage statements, and (10) violations of California Unfair Competition Law. (Doc. No. 1-3.) The putative class comprises non-exempt hourly employees of defendant Frito-Lay, the owner and operator of several distribution centers throughout California. Plaintiff alleges that defendant implemented policies and practices that resulted in the alleged violations of employment laws. On May 23, 2014, defendant removed the case to this court. (Doc. No. 1.)

After the class action was filed, plaintiff's counsel investigated the claims further and determined that the contemplated class needed to be narrowed to cover only alternative work week employees (e.g., those working four ten-hour days a week) in the position of "Maintenance Mechanic." (Doc. No. 43-2 ("Beligan Decl.") ¶ 8.) Accordingly, plaintiff proceeded on two primary allegations related to these employees. First, plaintiff alleges defendant Frito-Lay engaged in a company-wide practice by which employees were denied a second meal period for every shift of ten or more hours. Second, plaintiff alleges Frito-Lay's company-wide practice and written rest break policy failed to authorize and permit a third rest break for shifts of ten or more hours.

After submitting to mediation, the parties executed a settlement agreement. (*See* Doc. No. 9-3.) On December 11, 2014, plaintiff filed an unopposed motion for preliminary approval of the class action settlement and conditional certification of the class. (Doc. No. 9.) On January 30, 2015, the matter was presented before the assigned magistrate judge for a hearing. (Doc. No. 11.) The parties were directed by the magistrate judge to file supplemental briefing addressing a number of perceived deficiencies in the motion for preliminary approval. (*See id*.) On August 5, 2015, the magistrate judge issued findings and recommendations recommending that the motion for preliminary approval be denied after concluding that plaintiff had failed to provide sufficient information to establish a class or to permit a determination that the proposed settlement fell within the range of possible approval. (Doc. No. 16.) The then-assigned district judge adopted those findings and recommendations and denied plaintiff's motion. (Doc. No. 17.)

/////

On December 4, 2015, this case was reassigned to the undersigned. (Doc. No. 18.) On January 14, 2016, plaintiff filed a renewed motion for preliminary approval and conditional class certification which included additional evidence supported by declarations of plaintiff Sanchez and his counsel. (Doc. No. 20.) On February 16, 2016, the matter came before the undersigned for hearing. At that hearing, the court noted that plaintiff's motion did not fully address the previous concerns of the court expressed in the order denying preliminary approval. The matter was continued for further hearing, and on April 19, 2016, plaintiff filed supplemental briefing, including an amended settlement agreement, in response to the modifications to the settlement terms suggested by the court at the February 16, 2016 hearing. (Doc. No. 27.) Following a second hearing on the matter, the court denied plaintiff's renewed motion. (Doc. No. 29.) In relevant part, the court expressed substantial concern with the calculations plaintiff's counsel had used in determining an assumed violation rate. (*See id.* 6–8.) Because the court found that plaintiff's counsel unnecessarily reduced his estimated recovery by half, it could not conclude that the amended settlement agreement was substantively fair or adequate, or the product of a well-informed negotiation. (*Id.* at 8.)

On February 23, 2017, plaintiff filed the second renewed motion for preliminary approval and conditional class certification, which is now before the court. (Doc. No. 43.) This motion is based on the same amended settlement agreement previously presented to the court. (*See* Doc. No. 43-3 ("Amended Settlement").) For purposes of this order, the court relies on its prior detailed description of the relevant terms of that Amended Settlement. (*See* Doc. No. 29 at 3–4.) At the hearing on the pending motion, the court expressed continued concerns and asked the parties to further advise how this litigation is to proceed should the court deny plaintiff's second renewed motion. On May 4, 2017, the parties filed a joint statement seeking a final opportunity to seek preliminary approval and conditional class certification. (Doc. No. 50.)

**LEGAL STANDARD & PROCESS FOR APPROVAL OF CLASS SETTLEMENTS**

"Courts have long recognized that settlement class actions present unique due process concerns for absent class members." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citation and internal quotations omitted). To protect the rights of absent

class members, Rule 23(e) of the Federal Rules of Civil Procedure requires the court approve all class action settlements "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Bluetooth*, 654 F.3d at 946. However, it has been recognized that when parties seek approval of a settlement agreement negotiated *prior* to formal class certification, "there is an even greater potential for a breach of fiduciary duty owed the class during settlement." *Bluetooth*, 654 F.3d at 946. Thus, the court must review such agreements with "a more probing inquiry" for evidence of collusion or other conflicts of interest than what is normally required under the Federal Rules. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Bluetooth*, 654 F.3d at 946.

When parties seek class certification for settlement purposes only, Rule 23 "demand[s] undiluted, even heightened, attention" to the requirements for certification. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Although here the parties do not dispute that the class exists for the purposes of settlement, the district court must examine the propriety of certification under Rule 23 both at this preliminary stage and at a later fairness hearing. *See, e.g.*, *Ogbuehi v. Comcast*, No. 2:13-cv-00672-KJM-KJN (E.D. Cal. Oct. 2, 2014); *West v. Circle K Stores, Inc.*, No. 2:04-cv-00438-WBS-GGH, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006).

Review of a proposed class action settlement ordinarily proceeds in three stages. *See* Manual for Complex Litigation (4th) § 21.632. First, the court conducts a preliminary fairness evaluation and, if applicable, considers conditional class certification. *Id.* Second, if the court makes a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms, the parties are directed to prepare the notice of certification and proposed settlement to the class members. *Id.* Third, the court holds a final fairness hearing to determine whether to approve the settlement. *Id.; see also Narouz v. Charter Commc'ns, Inc.*, 591 F.3d 1261, 1266–67 (9th Cir. 2010).

## DISCUSSION

In the current motion for preliminary settlement approval and conditional class certification, plaintiff's counsel primarily addresses—in new and sometimes contradictory detail—his methodology for determining the adjusted number of relevant work weeks and the

4

assumed violation rate underlying the valuation of plaintiff's two primary claims. As described

below, plaintiff's explanations do not resolve the court's previously expressed concerns and only

raise new questions about the fairness and reasonableness of the Amended Settlement.

**A.      The Putative Class and Sampling of Payroll Records**

The Amended Settlement results from plaintiff's counsel's investigation and conclusion that only a certain subset of defendant's employees could proceed on a class basis in this case. (*See* Beligan Decl. ¶ 8.) Specifically, plaintiff's counsel agreed to narrow the proposed class to a group of 137 Maintenance Mechanics only, based in part on evidence that these employees worked alternative work week schedules (e.g., four ten-hour days a week), rather than more traditional schedules (e.g., five eight-hour days a week). (*Id.*) Plaintiff's counsel reviewed the payroll records for thirty-one of these Maintenance Mechanics to calculate an estimate of damages for both meal period and rest break violations. (*See id.* ¶¶ 11, 15.) As a result, the Amended Settlement defines the putative class as comprising "all present and former employees of Frito-Lay, Inc. in the State of California who have held the title of Maintenance Mechanic or any similar position at any point between April 11, 2010, and March 10, 2015." (Amended Settlement § VIII.5.)

In submitting the instant renewed motion, plaintiff presents several new facts which, perhaps unintentionally, call into doubt the propriety of counsel's valuation of the relevant meal period and rest break claims. Plaintiff's counsel explains that sampled records include those of "Maintenance Mechanics who worked the same shift as the Plaintiff at his Kern location, as well as 20% of the Maintenance Mechanics at each of the other two California locations." (Doc. No. 43-1 at 4; Beligan Decl. ¶ 11.) Plaintiff's counsel also represents for the first time that "not all Maintenance Mechanics worked a 4x10 Alternative Workweek Schedule." (Beligan Decl. ¶ 12.) In his motion, plaintiff elaborates:

> [W]hile some Maintenance Mechanics did work this 4x10 schedule, *others remained on the traditional 5x8 schedule, and did not (or rarely) ever worked shifts that would entitle them to second meal periods and/or third rest periods in the first instance*. For example, Plaintiff's sampling of 31 employees included thirteen (13) employees on a 5x8 schedule, meaning that *almost 42% of his sample group would not likely have even triggered second meal or*

5

> *third rest period entitlements on a regular basis in the first instance*. This would further reduce potential violation rates and potential maximum damages, as Plaintiff's investigation revealed that the violations pertained only the second meal periods or third rest breaks. Plaintiff does not argue that Defendant was not compliant with regard to first meal periods and first and second rest breaks – the meals and breaks triggered by a regular 8-hour day. It appeared to Plaintiff that the issue arose when some (but not all) managers misunderstood how to apply Defendant's policy – which was lawful and clear in the context of an eight-hour day – to employees who worked ten hour days.

(Doc. No. 43-1 at 5–6 (emphases added).)[1]

These new revelations raise several new issues. First, broadly speaking, plaintiff's "valid random sample" of thirty-one employees—composed of (1) the Maintenance Mechanics working the same shift as plaintiff, and (2) 20 percent of the Maintenance Mechanics at each of the other two California locations—seems hardly random at all. Indeed, apart from plaintiff's conclusory assertion, the court finds no evidence that this sample accurately reflects 137 putative class members as a group. Second, plaintiff's counsel appears to have discovered that a significant portion of the 137 putative class members—as many as 42 percent—may not even share plaintiff's meal and rest break claims. Nevertheless, these individuals are presumably included in the proposed class, and pursuant to the Amended Settlement, these individuals would share in the settlement proceeds and be bound by the settlement's release provisions. (*See, e.g.*, Amended Settlement § VIII.3 (releases), § VIII.7(b) (allocating settlement funds based on total number of weeks worked, rather than the number of ten-hour days worked).) Third, in spite of the apparent admission that plaintiff's sample includes thirteen individuals who likely do not share in plaintiff's primary meal period and rest break claims, plaintiff's counsel continued to use the entire sample of thirty-one individuals' records as a basis for damages calculations with respect to those claims. Assuming that the putative class is improperly defined, this would have resulted in an underestimation of the violation rate, because nearly half of the examined records would not have reflected any ten-hour shifts giving rise to a missed second meal break or third rest break.

Taken together, these new facts create serious doubts about whether plaintiff's assumed violation rate is tethered to the experiences of those Maintenance Mechanics who worked

---

[1] These assertions, however, are not substantiated by any sworn declaration.

alternative work week schedules or ten-hour shifts. Even if plaintiff's assumed violation rate were accurate, the court is unconvinced that the proposed class definition is appropriate or that questions of law or fact are plausibly common to the proposed class.

**B.      Plaintiff's Assumed Violation Rate**

As outlined in a previous motion, plaintiff's counsel assumed that on average, putative class members were subject to one meal period violation and one rest break violation per week. (Doc. No. 20-1 at 18.) To arrive at this assumed violation rate, plaintiff's counsel explained that the sampling of payroll data initially indicated an average rate of two meal period violations and two rest break violations per week. (Doc. No. 27-1 ¶¶ 5–6.) Plaintiff's counsel multiplied this violation rate (2 violations/week) by 65 percent, based on the reasoning that putative class members worked 65 percent of the year, to arrive at a violation rate of 1.3 violations per week. (*Id.*) Plaintiff's counsel then rounded this number down to the nearest whole number, or one violation per week, to obtain an assumed violation rate. (*Id.*) This resulted in a value of $683,044.80 for each type of violation, and a total value of $1,366,089.60 for both meal period and rest break violations. (*Id.*)

The court has previously concluded that this methodology was faulty for two reasons. (*See* Doc. No. 29 at 7–8.) First, the reduction of the violation rate by 65 percent was duplicative because plaintiff's counsel already applied such a reduction in determining the adjusted number of relevant work weeks. Second, plaintiff unjustifiably rounded down the resulting violation rate from 1.3 to one violation per week. Thus, the court explained, counsel effectively halved the total estimated recovery for each claim. (*See id.*)

In the motion now before this court, plaintiff presents an entirely new and contradictory theory for arriving at 1.3 violations per week.[2] Instead of starting with a rate of two violations per week for each type of violation, plaintiff now states that the analysis of payroll records revealed

---

[2] While plaintiff refers to the initial rounding of the violation rate from 1.3 to 1 violation per week, he provides no new justification for doing so in the current motion. Instead, plaintiff merely argues that even if the violation rate is 1.3 violations per week, the total proposed settlement value is still reasonable relative to other settlement amounts in similar cases. (*See* Doc. No. 43-1 at 7–8.)

7

an estimated 4,896 violations for every 7,334 work weeks, or roughly 0.67 violations per week for each type of claim. (Doc. No. 43-1 at 7.) Plaintiff's counsel then doubled this rate to account for both types of violations, arriving at an estimated rate of 1.3 violations per week. (*Id.*) But plaintiff's counsel applied this combined violation rate to *each type* of violation, and as a result, inappropriately *doubled* the estimated value of recovery for the two claims. (*See id.*)

To date, plaintiff's counsel has presented at least two distinct accounts of how he arrived at an assumed violation rate, and more broadly, a valuation for plaintiff's principal meal period and rest break claims. In each instance, he miscalculated the value of plaintiff's claims—first by halving the estimated value, then by doubling it—based on faulty and unjustified math. Perhaps more troubling, however, these accounts are so distinct and seemingly contradictory that the court is dubious as to whether plaintiff's counsel *ever* performed a sincere and accurate valuation before approaching the negotiation table—or even before seeking preliminary approval from this court.

C.  **The Fairness, Reasonableness, and Adequacy of the Amended Settlement**

To assess the fairness of a settlement under Rule 23(e), district courts generally should weigh

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*Bluetooth*, 654 F.3d at 946 (citing *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). Prior to formal class certification, a preliminary fairness determination is appropriate "[i]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

Plaintiff's revelation that his sample of payroll data may be misrepresentative of the putative class, his apparent admission that the class itself may be improperly defined, and his

confounding explanations regarding the assumed violation rate have done little, if anything, to allay this court's previously expressed concerns. In their joint statement, filed after the hearing on this matter, the parties have provided additional information which may address some of the court's aforementioned concerns. For example, the parties now provide some showing that plaintiff's sample of payroll records reflects the records of the putative class as a whole. (*See* Doc. No. 50 at 1.) The parties also suggest that those sampled records confirm that every member of the putative class worked shifts over ten hours, despite plaintiff's prior statements to the contrary. (*Id.* at 2.) To the extent the court accepts these new assertions, however, it remains unclear whether the settlement is fair because, for example, class members would be entitled to compensation based on the total number of weeks they worked, rather than the number of ten-hour shifts they worked. (*See* Amended Settlement § VIII.7(b).) Moreover, this court is deeply skeptical that plaintiff's counsel adequately represented the interests of the absent putative class members in settlement negotiations or that the Amended Settlement is the product of a well-informed negotiation, based on counsel's continued failure to provide at least preliminary evidence supporting a plausible basis for his assumed violation rate.

Because the court in unable to confidently "consider plaintiffs' expected recovery balanced against the value of the settlement offer," it cannot reasonably conclude that the Amended Settlement is reasonable or falls "within the range of possible approval." *See Tableware*, 484 F. Supp. 2d at 1079–80. Accordingly, the court must deny preliminary approval.

## CONCLUSION

Plaintiff's current motion represents the third attempt—and fourth round of briefing—to seek approval of the same underlying settlement agreement. At each step of this process, the court has advised plaintiff of deficiencies in his request, and some of those deficiencies persist. Even more confoundingly, plaintiff's counsel has now offered multiple contradictory statements, some through sworn declarations, about his valuation methodologies—which now have been seriously called into question twice.

Nevertheless, the parties have assured the court that they did in fact negotiate a settlement in earnest and now ask for one final opportunity to address the court's concerns. The court will

grant the parties' request, but it advises the parties to carefully review all of the court's numerous prior rulings in this case and to fully address each of its previously expressed concerns in any potential motion for preliminary settlement approval and conditional class certification. Ultimately, approval of a settlement may require that the parties consider whether further modifications to the Amended Settlement are necessary or if further negotiation between the parties is warranted. This will be the parties' last opportunity to seek approval of the proposed settlement agreement, and the parties are strongly encouraged to submit a complete request that provides this court with all necessary factual and legal bases on which to consider preliminary settlement approval and conditional class certification. The court does not anticipate providing any further guidance as to what the parties are expected to show, nor will the court consider approving a proposed settlement in a piecemeal manner. Should the court ultimately deny a subsequent motion for preliminary approval, the parties should expect to resolve this litigation outside of the class action context.

For the reasons set forth above,

1. Plaintiff's renewed motion for preliminary settlement approval and conditional class certification (Doc. No. 43) is denied;
2. The parties are granted leave to file a final motion for preliminary settlement approval and conditional class certification; and
3. The matter is referred to the assigned magistrate judge for further scheduling consistent with this order.

IT IS SO ORDERED.

Dated: **June 26, 2017**

_____
UNITED STATES DISTRICT JUDGE