1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ELIAZAR SANCHEZ, on behalf of              No.  1:14-cv-00797-DAD-BAM
     himself and all others similarly situated,
12
                    Plaintiffs,
13                                               ORDER GRANTING PRELIMINARY CLASS
         v.                                      CERTIFICATION AND DENYING MOTION
14                                               FOR PRELIMINARY APPROVAL OF
     FRITO-LAY, INC.,                            CLASS ACTION SETTLEMENT
15
                    Defendant.                   (Doc. No. 67)
16

17

18          For the final time,[1] plaintiff Eliazar Sanchez is seeking preliminary settlement approval

19   and conditional class certification.  (Doc. No. 67.)  A hearing on the motion was held on

20   December 4, 2018.  Attorney Jerusalem Beligan appeared telephonically on behalf of plaintiff

21   Eliazar Sanchez, and attorney Samantha Hardy appeared telephonically on behalf of defendant

22   Frito-Lay, Inc.  For the reasons stated below, plaintiff's motion will be granted in part.

23                                          **BACKGROUND**

24          The factual background of this case has been discussed in this court's prior orders denying

25   plaintiff's motion for preliminary settlement approval and conditional class certification.  (*See*

26   _____

27   [1]  The order denying plaintiff's third motion for preliminary settlement approval and conditional
     class certification granted the parties one final opportunity to address the court's concerns.  (Doc.
28   No. 51 at 10.)

                                                    1

Doc. Nos. 16 at 2–4; 29 at 1–4; 51 at 1–3.)  That background will not be repeated here in its entirety.  Only those facts relevant to the disposition of the pending renewed motion for preliminary settlement approval and preliminary class certification will be discussed below.

Plaintiff filed this putative class action in Kern County Superior Court on April 11, 2014, alleging the following causes of action under California law:  (1) failure to pay regular hourly wages, (2) failure to pay overtime wages, (3) failure to pay the correct overtime rate of pay, (4) failure to pay premium wages for denial of meal and rest periods, (5) failure to pay vested vacation wages, (6) illegal deductions of vested vacation wages, (7) breach of contract for failure to pay vested wages, (8) failure to pay final wages due upon termination, (9) failure to provide accurate itemized wage statements, and (10) violation of the Unfair Competition Law.  (Doc. No. 1-3.)  The putative class is comprised of non-exempt hourly employees of defendant Frito-Lay, Inc., the owner and operator of several distribution centers throughout California.  (*Id.* at ¶ 3.)  Plaintiff alleges that defendant implemented policies and practices that resulted in the alleged violations of employment laws.  On May 23, 2014, defendant removed the case to this court.  (Doc. No. 1.)

After the class action was filed, plaintiff's counsel investigated the claims further and determined that the contemplated class needed to be narrowed to cover only employees in the position of "Maintenance Mechanic."  (Doc. No. 43-2 ¶ 8.)  Accordingly, plaintiff proceeded on two primary allegations related to this narrowed class of employees.  First, plaintiff alleges defendant engaged in a company-wide practice by which employees were denied a second meal period for every shift of ten or more hours.  Second, plaintiff alleges defendant's company-wide practice and written rest break policy failed to authorize and permit a third rest break for shifts of ten or more hours.

After submitting to mediation on November 25, 2014, the parties executed a settlement agreement.  (*See* Doc. No. 9-3.)  Plaintiff previously moved for preliminary approval of the class action settlement and conditional certification of the class on December 11, 2014 (Doc. No. 9), January 14, 2016 (Doc. No. 20), and February 23, 2017 (Doc. No. 43).  The court denied all three previous motions filed by plaintiffs seeking preliminary settlement approval and conditional class

certification due to substantial and continuing expressed concerns with the calculations plaintiff's counsel had employed in determining an assumed violation rate. (*See* Doc. Nos. 17, 29, 51.)

On November 9, 2018, plaintiff filed the fourth and final renewed motion presently before the court. (Doc. No. 67.) The renewed motion is based on a revised settlement agreement. (*See* Doc. No. 67-2, Beligan Decl., Ex. A ("Revised Settlement").) That Revised Settlement reflects the calculations and analysis of the potential violations during the class period as determined by economic expert Deepak Goel, who was retained by the parties after the court denied plaintiff's February 23, 2017 motion for settlement approval. (Doc. No. 67-4, Goel. Decl.)

Pursuant to the proposed Revised Settlement, the class consists of 193 putative class members who are divided into two subclasses: (1) the 4x10 Subclass and (2) the 5x8 Subclass. (Revised Settlement at 12–13.) The 4x10 Subclass is comprised of 131 current and former Maintenance Mechanics who worked four ten-hour days a week. (*Id.* at 12.) The 5x8 Subclass is comprised of 62 current and former Maintenance Mechanics who worked five eight-hour days a week. (*Id.*) The class period begins on April 11, 2010 and ends June 24, 2015. (*Id.* at 11.)

Under the Revised Settlement, defendant has agreed to increase the maximum settlement amount from $600,000 to $710,473.33. (*Id.* at 20.) The agreement provides for the following allocation of that maximum amount: (i) attorneys' fees of $177,618.33, or twenty-five percent of the settlement fund; (ii) $20,000 to be paid to class counsel for reasonable costs; (iii) an incentive award to plaintiff in the amount of $7,500; (iv) a PAGA payment in the amount of $5,000; (v) $10,000 for the fees and costs of the Settlement Administrator; and (vi) the remaining payout fund of $490,355[2] to be distributed to class members. (*Id.* at 20–21.) The payout fund of $490,355 will be divided between the two subclasses, with the 4x10 Subclass receiving 90.1 percent of the allocation, or $441,809.86 ($490,355 x 90.1%), and the 5x10 Subclass receiving

/////

/////

---

[2] Plaintiff's pending motion and the Revised Settlement state that the payout fund allocation will be $491,355 (Doc. Nos. 67-1 at 10; Revised Settlement at 21) but elsewhere state it will be $491,605 (Doc. No. 67-1 at 12). After the other allocated deductions, the court's recalculation indicates the remaining amount for the payout fund to be $490,355.

9.9 percent of the allocation, or $48,545.14 ($490,355 x 9.9%).[3]  (*Id.* at 21.)  Each class member's settlement payment will be a proportionate share of the payout fund based on weeks worked during the class period.  (*Id.* at 22.)  Any unpaid or unclaimed funds will be distributed to the State Treasury's Trial Court Improvement and Modernization Fund, the State Treasury Equal Access Fund of the Judicial Branch, and The United Way.  (*Id.* at 22.)  As such, no money will revert to defendant.  (Doc. No. 67-1 at 10.)

Plaintiff seeks an order from this court:  (i) preliminarily certifying the class for purposes of settlement, with appointment of plaintiff as class representative, appointment of plaintiff's counsel as class counsel, and approval of ILYM Group, Inc. as the settlement administrator; (ii) approving the proposed form and method of notice to be disseminated to the class; and (iii) scheduling the hearing date for the final approval of the class settlement.  (Doc. No. 67-1 at 37.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) mandates that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  The following procedures apply to the court's review of the proposed settlement:

> The court must direct notice in a reasonable manner to all class members who would be bound by the proposal . . . .
>
> If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate . . . .
>
> The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
>
> . . . .
>
> Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

*Id.*

/////

---

[3]  The court has recalculated the allocation to the subclasses based on Mr. Goel's distribution formula but using the correct payout fund amount.  Thus, the values provided in plaintiff's motion, Revised Settlement, and Mr. Goel's declaration are not reflected in this order.

"Courts have long recognized that settlement class actions present unique due process concerns for absent class members." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citation and internal quotations omitted). To protect the rights of absent class members, Rule 23(e) requires that the court approve all class action settlements "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *In re Bluetooth*, 654 F.3d at 946. However, when parties seek approval of a settlement agreement negotiated prior to formal class certification, "there is an even greater potential for a breach of fiduciary duty owed the class during settlement." *In re Bluetooth*, 654 F.3d at 946. Thus, the court must review such agreements with "a more probing inquiry" for evidence of collusion or other conflicts of interest than what is normally required under the Federal Rules. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).

Review of a proposed class action settlement ordinarily proceeds in three stages. *See* Manual for Complex Litigation, Fourth, § 21.632. First, the court conducts a preliminary fairness evaluation and, if applicable, considers class certification. Second, if the court makes a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms, the parties are directed to prepare the notice of certification and proposed settlement to the class members. *Id.* (noting that if the parties move for both class certification and preliminary approval, the certification hearing and preliminary fairness evaluation can usually be combined). Third, the court holds a final fairness hearing to determine whether to approve the settlement. *Id.*; *see also Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1266–67 (9th Cir. 2010).

Here, the parties move for preliminary class certification and preliminary approval of a class action settlement. Though Rule 23 does not explicitly provide for such a procedure, federal courts generally find preliminary approval of settlement and notice to the proposed class appropriate if the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Lounibos v. Keypoint Gov't Sols. Inc.*, No. 12-cv-00636-JST, 2014 WL 558675, at *5

(N.D. Cal. Feb. 10, 2014) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)); *see also Dearaujo v. Regis Corp.*, No. 2:14-cv-01408-KJM-AC, 2:14-cv-01411-KJM-AC, 2016 WL 3549473 (E.D. Cal. June 30, 2016) ("Rule 23 provides no guidance, and actually foresees no procedure, but federal courts have generally adopted [the process of preliminarily certifying a settlement class]."); Newberg on Class Actions § 13:13 (5th ed. 2011).

## DISCUSSION

### A. Preliminary Certification of Class

Plaintiff seeks preliminary certification of the proposed settlement class under Rule 23 of the Federal Rules of Civil Procedure.

#### 1. Rule 23(a) Requirements

"Rule 23(a) establishes four prerequisites for class action litigation: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003). The court will address each requirement below.

##### a. Numerosity

A proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The numerosity requirement demands "examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980). Courts have found the requirement satisfied when the class comprises of as few as thirty-nine members, or where joining all class members would serve only to impose financial burdens and clog the court's docket. *See Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 474 (E.D. Cal. 2010) (citing *Jordan v. L.A. County*, 669 F.2d 1311, 1319 (9th Cir.), *vacated on other grounds*, 459 U.S. 810 (1982)) (discussing Ninth Circuit thresholds for numerosity); *In re Itel Secs. Litig.*, 89 F.R.D. 104, 112 (N.D. Cal. 1981).

Here, plaintiff asserts that there are 193 members in the settlement class. (Revised Settlement at 13.) The class is readily ascertainable because all class members have worked for defendant and can be easily identified through defendant's employee and payroll records. (Goel Decl. at ¶ 3.) This showing with respect to numerosity is adequate to meet the requirements of Rule 23(a)(1). *See, e.g.*, *Collins v. Cargill Meat Sols. Corp.*, 274 F.R.D. 294, 300 (E.D. Cal.

6

2011) ("Courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members.").

### b. Commonality

Rule 23(a) also requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy the commonality requirement, the class representatives must demonstrate that common points of facts and law will drive or resolve the litigation. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.") (internal citations omitted). "Commonality is generally satisfied where . . . 'the lawsuit challenges a system-wide practice or policy that affects all of the putative class members.'" *Franco v. Ruiz Food Prods., Inc.*, No. CV 10-02354 SKO, 2012 WL 5941801, at *5 (E.D. Cal. Nov. 27, 2012) (quoting *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504–05 (2005)). The rule does not require all questions of law or fact to be common to every single class member. *See Hanlon*, 150 F.3d at 1019 (noting that commonality can be found through "[t]he existence of shared legal issues with divergent factual predicates"). However, the raising of merely any common question does not suffice. *See Dukes*, 564 U.S. at 349 ("[a]ny competently crafted class complaint literally raises common 'questions.'") (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 131–132 (2009)).

Here, plaintiff argues that the alleged California law violations are common to each member of the class. (Doc. No. 67-1 at 34.) The proposed class action stems from the same factual and legal issues centered on whether defendant provided class members with second meal periods and third rest breaks when they worked over ten hours. (*Id.*) Because it appears that the same conduct which defendant allegedly engaged in "would form the basis of each of the plaintiff's claims," the court finds that commonality is satisfied. *Murillo*, 266 F.R.D. at 475 (citing *Acosta v. Equifax Info. Servs., L.L.C.*, 243 F.R.D. 377, 384 (C.D. Cal. 2007) (internal quotation marks omitted)).

### c.  Typicality

Rule 23(a)(3) also requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3); *Armstrong*, 275 F.3d at 868. Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong*, 275 F.3d at 868; *see also Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (claims are typical where named plaintiffs have the same claims as other members of the class and are not subject to unique defenses). While representative claims must be "reasonably co-extensive with those of absent class members," they "need not be substantially identical." *Hanlon*, 150 F.3d at 1020; *see also Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Here, plaintiff Sanchez worked for defendant four ten-hour day a week as a Maintenance Mechanic during the relevant class period. (Doc. Nos. 41-9, Sanchez Decl. at ¶¶ 3–12; 67-1 at 35.) Although plaintiff was a member of the 4x10 Subclass and did not work five eight-hour days a week like the class members in the 5x8 Subclass, plaintiff's claims for meal and rest premiums for shifts when he was not provided a second or third rest break are typical of each subclass identified in the Revised Settlement. (*Id.*) Plaintiff's claims arise from the same course of conduct and are based upon the same legal theories as those applicable to class members in each of the two subclasses. (Doc. No. 67-1 at 35.) The court concludes that plaintiff's claims are reasonably co-extensive with those of the settlement class, and that typicality is therefore satisfied here.

### d.  Adequacy of Representation

The final Rule 23(a) prerequisite is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The proper resolution of this issue requires that two questions be addressed:  (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec.*

/////

*Litig.*, 213 F.3d 454, 462 (9th Cir. 2000); *see also Pierce v. County of Orange*, 526 F.3d 1190, 1202 (9th Cir. 2008).

Plaintiff Sanchez, the proposed class representative, appears to have no conflicts of interests adverse to those of the class members in the 4x10 or the 5x8 Subclasses and is committed to vigorously prosecuting the case on behalf of the class. (*See* Sanchez Decl. at ¶¶ 14–24; 67-1 at 35.) Moreover, plaintiff's counsel has provided declarations representing that they have no conflicts of interest and are experienced class action litigators who are fully qualified to pursue the interests of the class. (Doc. Nos. 67-2, 67-3.) As such, the court finds that plaintiff Sanchez and plaintiff's counsel satisfy the adequacy of representation requirement.

### 2. Rule 23(b)(3) Requirements

In addition to the requirements of Rule 23(a), Rule 23(b)(3) requires: (i) that the questions of law or fact common to class members predominate over any questions affecting only individual members; and (ii) that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997). The test of Rule 23(b)(3) is "far more demanding," than that of Rule 23(a). *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (quoting *Amchem*, 521 U.S. at 623–24). The court examines each requirement in turn below.

#### a. Predominance

First, common questions must "predominate" over any individual questions. While this requirement is similar to the Rule 23(a)(2) commonality requirement, the standard is much higher at this stage of the analysis. *Dukes*, 564 U.S. at 359; *Amchem*, 521 U.S. at 624–25; *Hanlon*, 150 F.3d at 1022. While Rule 23(a)(2) can be satisfied by even a single question, Rule 23(b)(3) requires convincing proof the common questions "predominate." *Amchem*, 521 U.S. at 623–24; *Hanlon*, 150 F.3d at 1022. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.

/////

9

Plaintiff contends that all class members during the class period were subjected to defendant's alleged practice of failing to provide second meal breaks and third rest breaks when they worked shifts of over ten hours. (Doc. No. 67-1 at 36–37.) Thus, plaintiff and the putative class share a common nucleus of operative facts and potential legal remedies. (*Id.*) Class actions in which a defendant's practices are challenged generally satisfy the predominance requirement of Rule 23(b)(3). *See Palacios v. Penny Newman Grain*, No. 1:14-cv-01804, 2015 WL 4078135, at *5–6 (E.D. Cal. July 6, 2015); *see also Clesceri v. Beach City Investigations & Protective Servs., Inc.*, No. CV-10-3873-JST RZX, 2011 WL 320998, at *7 (C.D. Cal. Jan. 27, 2011). The predominance requirement has therefore been met in this case.

### b. Superiority

Rule 23(b)(3) also requires a court to find "a class action is superior to other available methods for the fair adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In resolving the Rule 23(b)(3) superiority inquiry, "the court should consider class members' interests in pursuing separate actions individually, any litigation already in progress involving the same controversy, the desirability of concentrating in one forum, and potential difficulties in managing the class action—although the last two considerations are not relevant in the settlement context." *See Palacios*, 2015 WL 4078135, at *6 (citing *Schiller v. David's Bridal Inc.*, No. 10-0616, 2012 WL 2117001, at *10 (E.D. Cal. June 11, 2012)).

By consolidating approximately 193 potential individual actions into a single proceeding here, plaintiff argues that the class action device enables more efficient management of this litigation for the court and the litigants alike. (Doc. No. 67-1 at 36–37.) Plaintiff also argues that, absent class treatment, the cost of litigation would far exceed the potential recovery for each individual class member with small, but potentially meritorious claims. (*Id.*) These reasons are persuasive, and warrant finding that the superiority requirement is also satisfied here.

### B. Preliminary Fairness Determination

Plaintiff also seeks the preliminary approval of the proposed settlement. Under Rule 23(e), a court may approve a class action settlement only if the settlement is fair, reasonable, and adequate. *In re Bluetooth*, 654 F.3d at 946. "[P]reliminary approval of a settlement has both a

procedural and substantive component." *See, e.g.*, *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079 (citing *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 570 n.12 (E.D. Pa. 2001)). In particular, preliminary approval of a settlement and notice to the proposed class is appropriate if: (i) the proposed settlement appears to be the product of serious, informed, non-collusive negotiations; and (ii) the settlement falls within the range of possible approval, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives or segments of the class. *Id.*; *see also Ross v. Bar None Enters., Inc.*, No. 2:13–cv–00234–KJM–KJN, 2014 WL 4109592, at *9 (E.D. Cal. Aug. 19, 2014). However, a district court reviewing a proposed settlement is not to "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute." *Chem. Bank v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).

### 1. Procedural Fairness

The court must consider whether the process by which the parties arrived at their settlement is truly the product of arm's length bargaining, rather than collusion or fraud. *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 613 (E.D. Cal. May 31, 2016). A settlement is presumed fair if it "follow[s] sufficient discovery and genuine arms-length negotiation." *Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)).

As noted above, after the parties participated in a mediation on November 25, 2014, they executed a settlement agreement. (*See* Doc. No. 9-3.) Plaintiff also represents that, prior to mediation, plaintiff served special interrogatories and requests for production of documents, as well as a 30(b)(6) deposition notice to defendant. (Doc. No. 67-1 at 30–31.) In response, defendant produced plaintiff's personnel file, policies and manuals applicable during the class period, and the punch and payroll data of thirty-one randomly selected class members. (*Id.* at 31.) In addition to this information, defendant produced the time and payroll data for an additional thirty-eight employees in the 4x10 Subclass and for an additional thirty-nine employees in the 5x10 Subclass. (*Id.*) Finally, the court also notes that the parties have vigorously engaged in arms-length negotiations to address the court's various concerns as expressed in the denials of the

previously filed motions for preliminary settlement approval. This included, but was not limited to, acquiring the services of a third-party expert to review the time and pay records of seventy-seven individuals in the settlement class. (Revised Settlement at 15.) Based on these representations, the court concludes that the parties' negotiations which resulted in the Revised Settlement constituted genuine, informed, arm's length bargaining.

### 2. Substantive Fairness

#### a. Adequacy of the Settlement Amount

To evaluate the fairness of the settlement award, the court should "compare the terms of the compromise with the likely rewards of litigation." *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). To determine whether a settlement "falls within the range of possible approval" a court must focus on "substantive fairness and adequacy," and "consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080.

Here, the total proposed settlement is now in the amount of $710,473.33. (Revised Settlement at 20.) The portion of the settlement allocated to the payout fund for the 4x10 Subclass and the 5x8 Subclass is, according to the court's calculation as indicated below, $490,355. Plaintiff estimates that defendant's maximum possible damages exposure with respect to both subclasses is approximately $4,963,136. (Doc. No. 67-1 at 28; Goel Decl. at ¶ 31.) The proposed allocation of $710,473.33 to settle the claims of these two subclasses thus represents approximately 14 percent of plaintiff's maximum possible recovery. This settlement amount is not per se unreasonable, and district courts in California have found lower percentage recoveries under some circumstances to be reasonable for this purpose. *See, e.g.*, *Balderas v. Massage Envy Franchising, LLC*, Case No. 12-cv-06327 NC, 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014) (settlement of approximately 5 percent found to be preliminarily fair).

/////

Although plaintiff concludes that the maximum possible recovery of his claims is approximately $4,963,136, he argues that the settlement of those claims for a discounted amount is appropriate here given defendant's denial of plaintiff's allegations and its assertion of affirmative defenses with respect to plaintiff's claims. Specifically, defendant contends that its meal and rest period policies during the class period were in compliance with California law and that it authorized and permitted class members to take required meal and rest breaks. (Doc. No. 67-1 at 28.) Defendant has presented declarations from at least three employees who declared they were provided with and, in fact, took the required breaks. (*See* Doc. No. 67-2, Ex. G.) As such, plaintiff contends that there was a risk that defendant could defeat class certification or avoid a finding of liability on the merits. (Doc. No. 67-1 at 20.) Given defendant's anticipated defenses and the risks to plaintiff posed by litigating those issues, the court finds that the amount to be paid to the two subclasses under the Revised Settlement is substantively fair, reasonable, and adequate.

### b. Attorneys' Fees

When a negotiated class action settlement includes an award of attorneys' fees, the fee award must be evaluated in the overall context of the settlement. *Knisley v. Network Assocs.*, 312 F.3d 1123, 1126 (9th Cir. 2002). At the same time, the court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941; *see also Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328–29 (9th Cir. 1999). Where, as here, fees are to be paid from a common fund, the relationship between the class members and class counsel "turns adversarial." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994). As a result, the district court must assume a fiduciary role for the class members in evaluating a request for an award of attorney fees from the common fund. *Id.*; *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009).

The Ninth Circuit has approved two methods for determining attorneys' fees in such cases where the attorneys' fee award is taken from the common fund set aside for the entire settlement: the "percentage of the fund" method and the "lodestar" method. *Vizcaino v. Microsoft Corp.*, 290

13

F.3d 1043, 1047 (9th Cir. 2002) (citation omitted). The district court retains discretion in common fund cases to choose either method. *Id.*; *Vu v. Fashion Inst. of Design & Merch.*, No. CV 14-08822 SJO (EX), 2016 WL 6211308, at *5 (C.D. Cal. Mar. 22, 2016). Under either approach, "[r]easonableness is the goal, and mechanical or formulaic application of method, where it yields an unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002).

Under the percentage of the fund method, the court may award class counsel a given percentage of the common fund recovered for the class. *Id.* In the Ninth Circuit, a twenty-five percent of the common fund award is the "benchmark" amount of attorneys' fees, but courts may adjust this figure upwards or downwards if the record shows "special circumstances justifying a departure." *Id.* (quoting *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). Percentage awards of thirty percent are common. *See Vizcaino*, 290 F.3d at 1047; *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) ("This court's review of recent reported cases discloses that nearly all common fund awards range around 30% even after thorough application of either the lodestar or twelve-factor method."). Nonetheless, an explanation is necessary when the district court departs from the twenty-five percent benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir. 2000).

To assess whether the percentage requested is reasonable, courts may consider a number of factors, including:

> [T]he extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015) (internal quotation marks omitted). The Ninth Circuit has permitted courts to award attorneys' fees using this method "in lieu of the often more time-consuming task of calculating the lodestar." *In re Bluetooth*, 654 F.3d at 942.

/////

14

California law governs the award and calculation of attorneys' fees because plaintiff's claims are based on state law. *See Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1024 (9th Cir. 2003) ("An award of attorneys' fees incurred in a suit based on state substantive law is generally governed by state law."). Under California law, "[t]he primary method for establishing the amount of reasonable attorney fees is the lodestar method." *In re Vitamin Cases*, 110 Cal. App. 4th 1041, 1053 (2003) (internal quotation marks and citations omitted). The court determines the lodestar amount by multiplying a reasonable hourly rate by the number of hours reasonably spent litigating the case. *See Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 (9th Cir. 2001). The product of this computation, the "lodestar" amount, yields a presumptively reasonable fee. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). The Ninth Circuit has recommended that district courts apply one method but cross-check the appropriateness of the amount by employing the other as well. *See In re Bluetooth*, 654 F.3d at 944.

Here, the proposed settlement provides that class counsel will seek an award of attorneys' fees not to exceed $177,618.33, which represents 25 percent of the total settlement amount of $710,473.33. (Revised Settlement at 23.) This fee amount is within the 25 percent benchmark for this circuit. *See In re Bluetooth*, 654 F.3d at 947; *Six (6) Mexican Workers*, 904 F.2d at 1311; *Staton*, 327 F.3d at 952 n.15. As such, the court approves the attorneys' fee request on a preliminary basis. In connection with the final fairness hearing, the court will perform a cross check of the requested amount with the lodestar amount based upon counsel's submission and determine whether the award of attorneys' fees being sought is fair and reasonable here.

### c. Incentive Payment

While incentive awards are "fairly typical in class action cases," they are discretionary sums awarded by the court "to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *West Publ'g Corp.*, 563 F.3d at 958–59; *Staton*, 327 F.3d at 977 ("[N]amed plaintiffs . . . are eligible for

reasonable incentive payments.").  Such payments are to be evaluated individually, and should look to factors such as "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." *Staton*, 327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).  Such awards must be "scrutinize[d] carefully . . . so that they do not undermine the adequacy of the class representatives."  *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013). Thus, incentive awards which are explicitly conditioned on the representatives' support for the settlement, as well as those that are significantly higher than the average amount awarded pursuant to the settlement, should often not be approved.  *Id.* at 1164–65.  The core inquiry is whether an incentive award creates a conflict of interest, and whether plaintiffs "maintain a sufficient interest in, and nexus with, the class so as to ensure vigorous representation."  *In re Online DVD-Rental*, 779 F.3d at 943.

Here, plaintiff has requested an incentive award of $7,500.  (Revised Settlement at 24.)  In support of this request, it is asserted that the named plaintiff has worked diligently with class counsel throughout the litigation of this case, undergone emotional and mental stress, and risked job opportunities by bringing suit against defendant.  (Doc. No. 67-1 at 24; Sanchez Decl. at ¶ 25.)  Under the Revised Settlement, named plaintiff also enters a broader release of claims than the putative class members, releasing and discharging the Released Parties "from all claims, demands, rights, liabilities and causes of action of every nature and description whatsoever" and agreeing that he will not be eligible for re-hire.  (Revised Settlement at 20, 49.)

An incentive award of $7,500 amounts to approximately 1 percent of the overall settlement amount of $710,473.33.  In comparison, under the payout fund of $490,355 as divided between the two subclasses, the 131 members of the 4x10 Subclass would receive an average payment of $3,372.59 and the 62 members of the 5x10 Subclass would receive an average payment of $782.99.  As such, the incentive award provided in the Revised Settlement is somewhat higher than the average recovery amount of individual class members.  However, courts in this circuit have previously approved incentive awards in this amount, and the court

finds that the award is "not outside the realm of what has been approved as reasonable by other courts." *Aguilar v. Wawona Frozen Foods*, No. 1:15-cv-00093-DAD-EPG, 2017 WL 2214936, at *8 (E.D. Cal. May 19, 2019) (and cases cited therein); *see also Brown v. Hain Celestial Grp., Inc.*, No. 3:11-cv-03082-LB, 2016 WL 631880, at *9 (N.D. Cal. Feb. 17, 2016) (approving an enhancement award of $7,500 to each class representative); *but see Ko v. Natura Pet Prods., Inc.*, Civ. No. 09–2619 SBA, 2012 WL 3945541, at *15 (N.D. Cal. Sept. 10, 2012) (holding that an incentive award of $20,000, comprising one percent of the approximately $2 million common fund was "excessive under the circumstances" and reducing the award to $5,000).

Because the court finds that the proposed incentive award appears to be reasonable, the court will approve it on a preliminary basis. At the final approval hearing, the court will review plaintiff's evidence that the requested incentive award is warranted here—i.e., evidence of the specific amount of time plaintiff spent on the litigation, the particular risks run and burdens carried by plaintiff as a result of the action, or the particular benefit that plaintiff provided to counsel and the class as a whole throughout the litigation. *See Bautista v. Harvest Mgmt. Sub LLC*, No. CV 12-10004 FMO (CWx), 2013 WL 12125768, at *15 (C.D. Cal. Oct. 16, 2013).

### d. Release of Claims

Finally, the Revised Settlement proposes a release of claims for the settlement class members and another for named plaintiff. The Revised Settlement defines "Release of Claims Affecting All Settlement Class Members" and "Release of Claims Affecting Only the Class Representative" as follows:

> [A]ll claims, demands, rights, liabilities, and causes of action of every nature and description whatsoever, known or unknown, asserted or that might have been asserted, whether in tort, contract, or for violation of any state constitution, statute, rule or regulation, including state and federal wage and hour laws, whether for economic damages, restitution, penalties or liquidated damages, that were or could have been pled based on the factual allegations in the Operative Complaint including, but not limited to, claims for unpaid regular hourly wages and overtime, unpaid premiums for alleged meal-and-rest period violations, unpaid vacation wages, untimely payment of all wages due upon termination, inaccurate wage statement, violations of California's Unfair Competition Law and Private Attorney General Act ("PAGA"), and violations of the Federal Labor Standards Act.

> The Class Representative . . . agrees to release not only the Released Claims, but to fully release and discharge the Released Parties from all claims, demands, liabilities, and causes of action of every nature and description whatsoever, known or unknown, asserted or that might have been asserted, whether in tort, contract, or for violation of any state or federal statute, rule or regulation arising out of, relating to, or in connection with any act or omission by or on the part of any of the Released Parties . . . . This includes any claims the Class Representative does not know or suspect to exist in his favor, which, if known by him, might have affected his settlement with, and release of, the Released Parties[.]

(Revised Settlement at 48–49.)

Although plaintiff Sanchez seemingly has agreed to enter into a broader release than the putative class under the Revised Settlement, he has knowingly consented to such a broad release of claims. (*See* Sanchez Decl. at ¶ 25.) However, pursuant to the proposed Revised Settlement, the court's role is to protect the rights of absent class members. *In re Bluetooth*, 654 F.3d at 946. Performing this role, the court believes that the release of claims applicable to the settlement class is also overbroad. In including language stating that the release covers claims that could have been pled "based on the factual allegations in the complaint," plaintiff contends that the release of claims appropriately tracks the claims at issue in this case. (*See* Doc. No. 67-1 at 14.) The release, however, includes claims for violation of PAGA and the Fair Labor Standards Act that plaintiff did not allege in his complaint and did not litigate in this action. (*See* Doc. No 1-3.) The language narrowing the release to those "based on the factual allegations in the complaint" is also rendered unclear when coupled with the earlier language that the release applies to claims "that might have been asserted." (Revised Settlement at 48.) An overbroad and unclear release of claims can present due process issues for absent class members if they do not know the extent of the claims they are releasing based on the language of the settlement agreement. *See Gonzalez v. CoreCivic of Tennessee, LLC*, No. 1:16-cv-01891-DAD-JLT, 2018 WL 4388425, at *11 (E.D. Cal. Sept. 12, 2018.) ("Without knowing what facts were ascertained during this case, an absent class member has no way of knowing what claims they are agreeing to release. This raises significant due process concerns.").

Moreover, the proposed release arguably releases claims up to the date of the Revised Settlement rather than being limited to the relevant dates of the identified class period. *See Bond*

*v. Ferguson Enter., Inc.*, No. 1:09-cv-01662-OWW-MSJ, 2011 WL 284962, at *7 (E.D. Cal. Jan. 25, 2011) ("This form of release is overbroad by arguably releasing all unrelated claims up to the date of the Agreement"). For these reasons, the court finds that broad release of claims embodied in the parties' Revised Settlement is not fair and reasonable.

### C. PAGA Penalties

Under PAGA, an "aggrieved employee" may bring an action for civil penalties for labor code violations on behalf of himself and other current or former employees. Cal. Lab. Code § 2699(a).[4] A plaintiff suing under PAGA "does so as the proxy or agent of the state's labor law enforcement agencies." *Arias v. Superior Court*, 46 Cal. 4th 969, 986 (2009).

The PAGA statute requires trial courts to "review and approve" any settlement of PAGA claims. Cal. Lab. Code § 2699(*l*)(2).[5] In the absence of authority governing the standard of review of PAGA settlements, the LWDA has in one action provided some guidance to the court. *See* California Labor and Workforce Development Agency's Comments on Proposed PAGA Settlement, *O'Connor v. Uber Techs., Inc.*, No. 3:13-cv-03826-EMC (N.D. Cal. Jul. 29, 2016), ECF No. 736 at 2–3. There, where both class action and PAGA claims were covered by a proposed settlement, the LWDA acknowledged that it was "not aware any existing case law established a specific benchmark for PAGA settlements, either on their own terms or in relation to the recovery on other claims in the action" but stressed that:

> [W]hen a PAGA claim is settled, the relief provided for under the PAGA be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and, in the context of a class action, the court evaluate whether the settlement meets the standards of being "fundamentally fair, reasonable, and adequate" with reference to the public policies underlying the PAGA.

*Id.*; *see also O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) (same).

---

[4] An "aggrieved employee" is defined as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." Cal. Lab. Code § 2699(c).

[5] The proposed settlement must also be submitted to the California Labor and Workforce Development Agency ("LWDA") at the same time it is submitted to the court. *Id.*

Recognizing the distinct issues presented by class actions, this court is nevertheless persuaded by the LWDA's reasoning expressed in *O'Connor* and therefore adopts its proposed standard in evaluating the PAGA-related settlement agreement now before the court. Accordingly, the court will approve a settlement of PAGA claims upon a showing that the settlement terms (1) meet the statutory requirements set forth by PAGA, and (2) are fundamentally fair, reasonable, and adequate[6] in view of PAGA's public policy goals.

Here, the Revised Settlement allocates $5,000 to plaintiffs' PAGA claims. (Settlement Agreement at 20.) Of that amount, 75 percent, or $3,750, will be paid to the LWDA, and 25 percent, or $1,250, will be paid to the to the settlement class members "as an additional component of their Individual Settlement Payments, and will be part of the Payout Fund." (Revised Settlement at 20–21.) After reviewing plaintiff's complaint, however, it appears that no PAGA claim was brought by plaintiff on his behalf or on behalf of other aggrieved employees. (*See* Doc. No. 1-3.) Although the proposed release of liability for the class includes "violations of . . . [the] Private Attorney General Act ("PAGA")," (Revised Settlement at 48), plaintiff has also not provided any evidence that he appropriately commenced a civil action by serving notice of his PAGA claim to the LWDA or to defendant so as to demonstrate he has authority to settle any PAGA claim. *See Stoddart v. Express Services*, No. 2:12-cv-01054-KJM-CKD, 2019 WL 414489, at *6 (E.D. Cal. Feb. 1, 2019) (noting that plaintiff must meet the notice requirements of Cal. Lab. Code § 2699.3(c) to have authority to settle a PAGA claim). Moreover, plaintiff has not established that a copy of the Revised Settlement was provided to the LWDA at the same time it was submitted to the court as required by Cal. Lab. Code § 2699(c). Accordingly, absent further explanation by the parties, the court declines to preliminarily approve the PAGA penalties called for in the Revised Settlement as fair, reasonable, and adequate.

/////

---

[6] The court's determination as to fairness, reasonableness, and adequacy may involve a balancing of several factors including but not limited to the following: the strength of plaintiffs' claims; the risk, expense, complexity, and likely duration of further litigation; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; and the experience and views of counsel. *See Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

### D. Proposed Class Notice and Administration

For proposed settlements under Rule 23, "the court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1); *see also Hanlon*, 150 F.3d at 1025 ("Adequate notice is critical to court approval of a class settlement under Rule 23(e)."). For a class certified under Federal Rule of Civil Procedure 23(b)(3), the notice must contain, in plain and easily understood language, (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4) that a class member may appear through an attorney if desired; (5) that the court will exclude members who seek exclusion; (6) the time and manner for requesting an exclusion; and (7) the binding effect of a class judgment on members of the class. Fed. R. Civ. P. 23(c)(2)(B). A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., LLC v. Gen. Elec.*, 561 F.3d 566, 575 (9th Cir. 2004) (internal quotations and citations omitted).

Here, the proposed settlement provides that notice shall be mailed to all class members at their last known address within thirty days after the preliminary approval date. (Revised Settlement at 28.) Defendant shall prepare a "Class List and Data Report" including the name, current mailing address, telephone number, social security number, and the number of weeks each class member worked during the pay period within a 4x10 or 5x8 schedule. (*Id.* at 25.) The proposed class notice also sets out the means and deadlines for class members to object to the proposed settlement and/or to be excluded from the settlement. (*Id.* at 50.)

Although the proposed mail delivery is also appropriate, before the Settlement Administrator administers the mailing to the class, the court directs plaintiff to amend the proposed notice form to: (1) reflect the correct values allocated to the payout fund for the two subclasses; (2) clarify whether a PAGA settlement allocation is appropriate and should be part of the release of claims in the notice form; and (3) narrow the release of claims for the settlement class. Only after plaintiff makes these changes to the notice form or explains to the court's satisfaction why the changes are unnecessary will the court be inclined to find that it is the "best

notice that is practicable under the circumstances" and therefore meets the requirements of Federal Civil Procedure Rule 23(c)(2)(B).

## CONCLUSION

For the reasons stated above, plaintiffs' motion for preliminary approval of class action settlement and preliminary class certification (Doc. No. 67) is granted in part.

The court grants plaintiff's motion for preliminary class certification; plaintiff's counsel Bisnar Chase, LLP is appointed as class counsel; named plaintiff, Eliazar Sanchez, is appointed as class representative; and ILYM Group Inc. is approved as Settlement Administrator.

The court denies plaintiff's motion for preliminary approval of class action settlement (Doc. No. 67.) The court is mindful of the strong judicial policy favoring settlements and this denial is without prejudice to plaintiff renewing his motion for preliminary approval of the settlement yet again to address the court's concerns regarding the purported PAGA claim settlement, release of claims, and notice form identified above.[7] In the event a renewed motion for preliminary approval of class action settlement is not filed first, the parties are once again directed to file a joint status report within 21 days of electronic service of this order informing the court how they intend to proceed in this litigation.

IT IS SO ORDERED.

Dated:   **September 30, 2019**   _____
UNITED STATES DISTRICT JUDGE

---

[7]   The undersigned recognizes that in its last order denying preliminary approval it was stated that no further guidance would be provided the parties and that piecemeal approval would not be forthcoming. (Doc. No. 51 at 10.) Nonetheless, the parties addressed the court's previously expressed concerns and it appears possible in light of that progress they may well be able to adequately address the court's final concerns with the Revised Settlement and will be given the opportunity to do so.

22