1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT

8                FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   ELIAZAR SANCHEZ, on behalf of            No. 1:14-cv-00797-DAD-BAM
     himself and all others similarly situated,
11                                            ORDER GRANTING MOTION FOR FINAL
                     Plaintiff,               APPROVAL OF CLASS ACTION
12                                            SETTLEMENT AND MOTION FOR
           v.                                 ATTORNEYS' FEES AND COSTS, CLASS
13                                            REPRESENTATIVE INCENTIVE AWARD,
     FRITO-LAY, INC.,                         AND SETTLEMENT ADMINISTRATOR
14                                            COSTS
                     Defendant.
15                                            (Doc. Nos. 80, 81)

16

17

18          This matter came before the court on May 3, 2021 for hearing on plaintiff's unopposed

19   motions for final approval of a class action settlement and for an award of attorneys' fees and

20   costs, a class action representative incentive award, and settlement administrator costs, filed on

21   behalf of plaintiff Eliazar Sanchez and the settlement class. (Doc. Nos. 80, 81.) Attorney

22   Jerusalem Beligan appeared telephonically on behalf of plaintiff Eliazar Sanchez and the

23   settlement class, and attorney Ashley Hirano appeared telephonically on behalf of defendant

24   Frito-Lay, Inc. For the reasons set forth below, the court will grant final approval of the class

25   action settlement and will issue an award attorneys' fees and costs to class counsel, Bisnar Chase,

26   LLP, an incentive award to plaintiff Eliazar Sanchez, and costs to the settlement administrator,

27   ILYM Group, Inc.

28   /////

                                                     1

**BACKGROUND**

The factual background of this case has been discussed in this court's prior orders addressing plaintiff's five motions for preliminary settlement approval and conditional class certification. (*See* Doc. Nos. 16 at 2–4; 29 at 1–4; 51 at 1–3; 73 at 2–4; 76 at 2–3.) That background will not be repeated in its entirety but will instead be summarized in this order.

Plaintiff filed this putative class action in Kern County Superior Court on April 11, 2014, alleging the following causes of action under California law: (1) failure to pay regular hourly wages, (2) failure to pay overtime wages, (3) failure to pay the correct overtime rate of pay, (4) failure to pay premium wages for denial of meal and rest periods, (5) failure to pay vested vacation wages, (6) illegal deductions of vested vacation wages, (7) breach of contract for failure to pay vested wages, (8) failure to pay final wages due upon termination, (9) failure to provide accurate itemized wage statements, and (10) violation of the Unfair Competition Law. (Doc. No. 1-3.) The putative class in this action is comprised of non-exempt hourly employees of defendant Frito-Lay, Inc., the owner and operator of several distribution centers throughout California. (*Id.* at ¶ 3.) Plaintiff alleges that defendant implemented policies and practices that resulted in the alleged violations of employment laws. On May 23, 2014, defendant removed this case to this federal court. (Doc. No. 1.)

After this action was filed, plaintiff's counsel investigated the claims further and determined that the proposed class definition needed to be narrowed to cover only the employees in the position of "Maintenance Mechanic." (Doc. No. 43-2 ¶ 8.) After which, plaintiff proceeded on two primary allegations related to this narrowed class of employees. First, plaintiff alleges that defendant engaged in a company-wide practice by which employees were denied a second meal period for every shift of ten or more hours. Second, plaintiff alleges that defendant's company-wide practice and written rest break policy failed to authorize and permit a third rest break for shifts of ten or more hours.

After submitting to mediation on November 25, 2014, the parties executed a settlement agreement. (*See* Doc. No. 9-3.) Plaintiff has previously moved for preliminary approval of the class action settlement and conditional certification of the class on December 11, 2014 (Doc. No.

9), January 14, 2016 (Doc. No. 20), February 23, 2017 (Doc. No. 43), November 9, 2018 (Doc. No. 67), and October 22, 2019 (Doc. No. 74). The court denied plaintiff's first three motions seeking conditional class certification and preliminary approval of their settlement due to the court's repeated and substantial expressed concerns with the calculations plaintiff's counsel had employed in determining an assumed violation rate. (*See* Doc. Nos. 17, 29, 51.) Plaintiff's fourth motion seeking preliminary approval was granted in part as to the preliminary class certification, but denied as to preliminary settlement approval because the court's expressed concerns regarding the purported California's Private Attorneys General Act ("PAGA") claim settlement, release of claims, and notice form still had not been addressed by counsel.[1] (Doc. No. 73 at 22.) The court ultimately granted preliminary approval of the settlement in this action on October 30, 2020 after the parties submitted an amendment to their revised settlement agreement ("Amended Settlement Agreement"), which omitted any reference to violations of PAGA and FLSA and released only those claims that arose during the class period, reallocated the $5,000.00 that was previously allocated to pay PAGA penalties "to the Payout Fund to be distributed to Settlement Class Members," and provided the court with an amended, more robust proposed notice. (Doc. No. 76.)

On April 12, 2021, plaintiff filed the pending unopposed motions for final approval of a class action settlement and for an award of attorneys' fees and costs, a class action representative incentive award and settlement administrator costs. (Doc. Nos. 80, 81.) As of the date of the hearing on May 3, 2021, no objections to the settlement have been received or filed with the court, and no class member has requested exclusion from the settlement. (Doc. No. 80-3 at ¶¶ 6–

---

[1] Specifically, the court denied plaintiff's fourth motion for preliminary approval of the revised settlement agreement filed on November 29, 2018, due to the following three deficiencies: (1) the revised settlement agreement's release of claims for the settlement class members was overbroad because it released claims for violations of PAGA and violations of the Fair Labor Standards Act ("FLSA"), despite the fact that plaintiff did not allege claims under either act in his complaint in this action, and it released claims up to the date of the revised settlement agreement, as opposed to being limited to the relevant dates of the identified class period; (2) the revised settlement agreement allocated $5,000.00 in PAGA penalties to the California Workforce Development Agency ("LWDA"), despite the fact that plaintiff did not even allege claims under PAGA; and (3) the proposed notice form was inadequate. (Doc. No. 73 at 17–21.)

7, 11–12.)  In addition, no objectors appeared at the May 3, 2021hearing on the motion now pending before the court.

## FINAL CERTIFICATION OF SETTLEMENT CLASS

The court conducted an examination of the class certification factors in the orders granting preliminary approval of the settlement and found certification warranted.  (Doc. Nos. 73 at 4–19, 21–22; 76 at 3–6.)  Because no additional issues concerning certification have been raised, the court will not repeat its prior analysis here, and finds that final class certification in this case is appropriate.

**A.    The Rule 23 Class**

The following class (the "Class") of an estimated 196 individuals (the "Class Members") is therefore certified for settlement purposes:

> All … employees of Defendant in California who were employed as Maintenance Mechanics at any time from April 11, 2010, through June 24, 2015.

(Doc. No. 74 at 5–30.)  The Settlement Class has also been further divided into two subclasses to account for the schedules worked by Maintenance Mechanics:  (1) Maintenance Mechanics who worked four ten-hour days a week (the "4x10 Subclass") and (2) Maintenance Mechanics who worked five eight-hour days a week (the "5x8 Subclass").  (*Id.*)  In addition, and for the reasons stated in the orders granting preliminary approval, plaintiff Sanchez is confirmed as the class representative, Bisnar Chase, LLP is confirmed as class counsel, and ILYM Group, Inc. ("ILYM") is confirmed as the settlement administrator.  (Doc. Nos. 73 at 8–9, 22; 76 at 6.)

## FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Class actions require the approval of the district court prior to settlement.  Fed. R. Civ. P. 23(e).  Federal Rule 23 requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).  The settlement as a whole, rather than the individual component parts, is examined for overall fairness.  *Hanlon,* 150 F.3d at 1026.

4

To approve a settlement, a district court must: (i) ensure notice is sent to all class members; (ii) hold a hearing and make a finding that the settlement is fair, reasonable, and adequate; (iii) the parties seeking approval file a statement identifying the settlement agreement; and (iv) class members be given an opportunity to object. Fed. R. Civ. P. 23(e)(1)–(5). The amended settlement agreement in this action was previously filed on the court's docket (*see* Doc. No. 74, Ex. 1), and class members have been given an opportunity to object thereto but, as noted, none have done so. The court now turns to the adequacy of notice and its review of the settlement following the final fairness hearing.

**A.  Notice**

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025; *see also Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir. 1994) (noting that the court need not ensure all class members receive actual notice, only that "best practicable notice" is given); *Winans v. Emeritus Corp.*, No. 13-cv-03962-HSG, 2016 WL 107574, at *3 (N.D. Cal. Jan. 11, 2016) ("While Rule 23 requires that 'reasonable effort' be made to reach all class members, it does not require that each individual actually receive notice."). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)). Any notice of the settlement sent to the class should alert class members of "the opportunity to opt-out and individually pursue any state law remedies that might provide a better opportunity for recovery." *Hanlon*, 150 F.3d at 1025. It is important for class notice to include information concerning the attorneys' fees to be awarded from the settlement because it serves as "adequate notice of class counsel's interest in the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 963 n.15 (9th Cir. 2003) (quoting *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)) (noting that where the notice references attorneys' fees only indirectly, "the courts must be all the more vigilant in protecting the interests of class members with regard to the fee award").

/////

5

The court previously reviewed the class notice that was proposed when the parties last sought preliminary approval of the settlement and found the notice to be satisfactory. (Doc. No. 76 at 5–7.) Following the grant of preliminary approval, counsel for defendant provided the settlement administrator ILYM with last known addresses for each of the 196 proposed class members. (Doc. Nos. 80-1 at 7; 80-3 at ¶ 5.) ILYM then conducted a National Change of Address search to update the list of proposed class members with current addresses and mailed the court-approved notice packet to each of the 196 proposed class members. (Doc. No. 80-3 at ¶¶ 5–7.) Of the 196 initial mailings, 7 were returned as undeliverable. (*Id.* at ¶ 8.) Of those 7 returned notice packets, 1 was returned with a forwarding address and ILYM states that they promptly re-mailed to the forwarding address provided. (*Id.*) ILYM performed a computerized skip trace on the 6 returned notice packets without a forwarding address, attempting to locate an updated address for each, and they were able to do so for 3 of the proposed class members. (*Id.* at ¶¶ 8–9.) As of April 12, 2021, a total of only 3 packets are undeliverable because the administrator was unable to find a deliverable address. (*Id.* at ¶ 10.) Thus, of the 196 total class members, 193 proposed class members, or 98.5%, are estimated to have received actual notice of the settlement. (*Id.*; Doc. No. 80-1 at 16.)

Given the above, the court concludes that adequate notice was provided to the class here. *See Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir. 1994) (courts need not ensure all class members receive actual notice, only that "best practicable notice" is given); *Winans*, 2016 WL 107574, at *3. The court accepts the reports of the settlement administrator and finds that sufficient notice has been provided satisfying Rule 23(e)(1).

**B.    Final Fairness Determination**

On May 3, 2021, the court held a final fairness hearing, at which class counsel and defense counsel appeared by video conferencing. No class members, objectors, or counsel representing the same appeared at that hearing. For the reasons explained below, the court now determines that the settlement reached in this case is fair, adequate, and reasonable. *See* Fed. R. Civ. P. 23(e)(2).

/////

At the final approval stage, the primary inquiry is whether the proposed settlement "is fundamentally fair, adequate, and reasonable." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012); *see also Hanlon*, 150 F.3d at 1026. "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026 (citing *Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982)); *see also Lane*, 696 F.3d at 818–19. Having already completed multiple preliminary examinations of the agreement, the court reviews it again, mindful that the law favors the compromise and settlement of class action suits. *See, e.g.*, *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Churchill Vill., L.L.C.,* 361 F.3d at 576; *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Justice*, 688 F.2d at 625. Ultimately, "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he [or she] is exposed to the litigants and their strategies, positions, and proof." *Staton*, 327 F.3d at 953 (quoting *Hanlon*, 150 F.3d at 1026).

In assessing the fairness of a class action settlement, courts balance the following factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C.*, 361 F.3d at 575; *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 964–67 (9th Cir. 2009). These settlement factors are non-exclusive, and each need not be discussed if they are irrelevant to a particular case. *Churchill Vill., L.L.C.*, 361 F.3d at 576 n.7.

    1.    <u>Strength of Plaintiffs' Case</u>

When assessing the strength of a plaintiff's case, the court does not reach "any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of th[e] litigation." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1388 (D. Ariz. 1989). The court cannot reach such a conclusion because evidence has not been fully presented. *Id*. Instead, the court "evaluate[s] objectively the strengths and weaknesses inherent in the

litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Id.*

Here, class counsel states that while they were confident in their ability to certify the class and that they would prevail on the merits of their claims, they assert that continuing to litigate would have presented many challenges because "they faced vigorous opposition from the Defendant." (Doc. No. 80-1 at 17.) Despite class counsel's confidence in their ability to demonstrate that plaintiff and the proposed class were not provided compliant meal and rest periods, class counsel noted that this case could have ultimately failed on liability or been whittled down. (*Id.*) Class counsel further argues that this uncertainty favors approval of a settlement. (*Id.* at 17–18.)

Therefore, it appears that while plaintiffs may have meritorious claims on a class-wide basis, it is far from certain that they would have prevailed on those claims or achieved full recovery with respect to them. The court finds that consideration of this factor weighs in favor of granting final approval of the settlement in this action.

2.     Risk, Expense, Complexity, and Likely Duration of Further Litigation

"[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d at 1101 (citing *Class Plaintiffs*, 955 F.2d at 1276). As a result, "[a]pproval of settlement is preferable to lengthy and expensive litigation with uncertain results." *Johnson v. Shaffer*, No. 2:12-cv-1059-KJM-AC, 2016 WL 3027744, at *4 (E.D. Cal. May 27, 2016) (citing *Morales v. Stevco, Inc.*, No. 1:09-cv-00704-AWI-JLT, 2011 WL 5511767, at *10 (E.D. Cal. Nov. 10, 2011)). Employment law class actions are, by their nature, time-consuming and expensive to litigate. *Hightower v. JPMorgan Chase Bank, N.A.*, No. 11-cv-1802-PSG-PLA, 2015 WL 9664959, at *6 (C.D. Cal. Aug. 4, 2015).

Though the parties have been litigating this case for nearly seven years, class counsel asserts that recovery of a monetary judgment, which is not guaranteed, would have been even further delayed by litigating this case to a final resolution through a jury trial. (Doc. No. 80-1 at 17.) As this case has not yet proceeded to the class certification stage, class counsel notes that additional discovery, including depositions, would have been required as well as "contentious

8

pre-certification law-and-motion work" that would have required a great deal of attorney and court time, substantially increasing litigation costs.  (*Id.*)  It is not only possible but likely that further litigating this case to a final resolution would have required significant investments of both time and expenses, absent a settlement.  Thus, consideration of this factor also weighs in favor of granting final approval.

### 3.    Amount Offered in Settlement

To evaluate the fairness of the settlement award, the court should "compare the terms of the compromise with the likely rewards of litigation."  *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968).  "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not *per se* render the settlement inadequate or unfair."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).  To determine whether a settlement "falls within the range of possible approval" a court must focus on "substantive fairness and adequacy," and "consider plaintiffs' expected recovery balanced against the value of the settlement offer."  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).

Here, the parties have agreed to a non-reversionary settlement of $710,473.33.  (Doc. No. 80-1 at 20.)  The settlement agreement provides for allocation of the gross settlement fund as follows:  (1) distribution of an estimated $495,355.00 payout fund to the class members; (2) an award of attorneys' fees in the amount of $177,618.33, which is 25% of the gross settlement fund; (3) reimbursement of class counsel's litigation expenses in the amount of $20,000[2]; (4) an incentive award of $7,500 to plaintiff Sanchez; and (5) an award of settlement administration costs estimated to be $10,000.  (*Id.* at 19–21; Doc. No. 81-1 at 4.)  The payout fund of $495,355 will be divided between the two subclasses, with the 4x10 Subclass receiving 90.1 percent of the allocation, or $446,314.85 ($495,355 x 90.1%), and the 5x10 Subclass receiving 9.9 percent of the allocation, or $49,040.15 ($495,355 x 9.9%).  (Doc. Nos. 73 at 3–4; 74 at 15–16.)  Within each subclass, each class member's settlement payment will be a proportionate share of the

---

[2]  Class counsel states that the full costs of representation have totaled $22,389.43, but they are only seeking reimbursement of $20,000.  (Doc. Nos. 81-1 at 4; 81-2 at ¶ 5.)

payout fund based on weeks worked during the class period. (Doc. No. 74, Ex. 1 at 15–16.) The settlement administrator estimates that the average payment for the participating class members in the 4x10 Subclass will be $2,277.12, with the highest payment estimated at $4,460.45; and the participating class members in the 5x8 Subclass will receive an average gross payment of $250.20, with the highest payment estimated at $1,058.78. (Doc. Nos. 80-1 at 20; 80-3 at ¶ 15.) None of the settlement will revert to defendant as any unpaid or unclaimed funds will be distributed in the following manner: 25% to the State Treasury's Trial Court Improvement and Modernization Fund, 25% to the State Treasury Equal Access Fund of the Judicial Branch, and 50% to The United Way, "to be earmarked for a veterans' organization within the arm of The United Way, if practicable." (Doc. Nos. 73 at 3–4; Doc. No. 67-2, Beligan Decl., Ex. A at 12–13; 74 at 16.)

Plaintiff estimates that defendant's maximum possible damages exposure with respect to both subclasses is approximately $4,963,136. (Doc. No. 73 at 12.) Given that the parties disagree as to whether plaintiff and the class would be entitled to recovery on any of the claims, as explained above, class counsel contends that the gross settlement amount of $710,473.33 is fair and reasonable in this case. (Doc. No. 80-1 at 23.) As the court observed in its order granting preliminary approval, the estimated net settlement of $710,473.33 to settle the claims of these two subclasses thus represents approximately 14 percent of plaintiff's maximum possible recovery of $4,963,136. (Doc. No. 73 at 12.) This settlement amount is not per se unreasonable, and district courts in California have found lower percentage recoveries under some circumstances to be reasonable for this purpose. *See, e.g.*, *Balderas v. Massage Envy Franchising, LLC*, Case No. 12-cv-06327 NC, 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014) (settlement of approximately 5 percent found to be preliminarily fair). Here, class counsel has argued that the settlement of these claims for a discounted amount is appropriate given defendant's denial of plaintiff's allegations, defendant's assertion of affirmative defenses with respect to plaintiff's claims, and the risks to plaintiff posed by litigating those issues. Specifically, defendant contends that its meal and rest period policies during the class period were in compliance with California law and that it authorized and permitted class members to take required meal and rest breaks and has presented

declarations from at least three employees who declared they were provided with and, in fact, took the required breaks.  (Doc. Nos. 67-1 at 28; 67-2, Ex. G.)  Consistent with the reasons stated in the court's prior order granting preliminary approval, the court finds that under the circumstances of this case the settlement amount is appropriate and fair.  Thus, consideration of this factor also weighs in favor of final approval.

### 4.  Extent of Discovery Completed and Stage of the Proceedings

 "In the context of class action settlement, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (quoting *In re Chicken Antitrust Litig.*, 669 F.2d 228, 241 (5th Cir. 1982)).  Approval of a class action settlement thus "is proper as long as discovery allowed the parties to form a clear view of the strength and weaknesses of their case." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013).  A settlement is presumed fair if it "follow[s] sufficient discovery and genuine arms-length negotiation." *Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)).  The court must consider whether the process by which the parties arrived at their settlement is truly the product of arm's length bargaining, rather than collusion or fraud. *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 613 (E.D. Cal. 2015).

In particular, where a class action settlement agreement is reached prior to a class being certified by the court, district courts must be watchful "not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 947.  These more subtle signs include:  (i) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (ii) the existence of a "clear sailing" arrangement, which provides "for the payment of attorneys' fees separate and apart from class funds," and therefore carries "the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class"; and (iii) "when the parties

arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.* (internal citations and quotation marks omitted). The Ninth Circuit has also recognized that a version of a "clear sailing" arrangement exists when a defendant expressly agrees not to oppose an award of attorneys' fees up to a certain amount. *Lane v. Facebook, Inc.*, 696 F.3d 811, 832 (9th Cir. 2012); *In re Bluetooth*, 654 F.3d at 947; *In re Toys R Us-Delaware, Inc.–Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 458 (C.D. Cal. 2014) ("In general, a clear sailing agreement is one where the party paying the fee agrees not to contest the amount to be awarded by the fee-setting court so long as the award falls beneath a negotiated ceiling.") (quoting *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 520 n.1 (1st Cir. 1991)).

While this court has wide latitude to determine whether a settlement is substantively fair, it is held to a higher procedural standard and "must show it has explored comprehensively all factors, and must give a reasoned response to all non-frivolous objections." *Allen v. Bedolla*, 787 F.3d 1218, 1223–24 (9th Cir. 2015) (quoting *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012)). The failure to review a pre-class certification settlement for those subtle signs of collusion identified above may constitute error. *Allen*, 787 F.3d at 1224–25.

As noted above, after submitting to mediation of this case on November 25, 2014, the parties executed a settlement agreement. (*See* Doc. No. 9-3.) Plaintiff has represented that prior to mediation, plaintiff served special interrogatories and requests for production of documents, as well as a 30(b)(6) deposition notice to defendant. (Doc. No. 67-1 at 30–31.) In response, defendant produced plaintiff's personnel file, policies and manuals applicable during the class period, and the punch and payroll data of thirty-one randomly selected class members. (*Id.* at 31.) In addition to this information, defendant produced the time and payroll data for an additional thirty-eight employees in the 4x10 Subclass and for an additional thirty-nine employees in the 5x10 Subclass. (*Id.*) Finally, the court also notes that the parties have vigorously engaged in arms-length negotiations to address the court's various concerns as expressed in the court's orders denying the previously filed motions for preliminary settlement approval. This included, but was not limited to, acquiring the services of a third-party expert to review the time and pay records of

individuals in the settlement class.  (Doc. No. 80-1 at 21.)  This litigation conduct supports the conclusion that this settlement is "not the product of fraud or overreaching by, or collusion among, the negotiating parties." *Class Plaintiffs*, 955 F.2d at 1290 (quoting *Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 997 (9th Cir. 1985)).  Based on these representations, the court concludes that the parties' negotiations, which resulted in their Revised Settlement, constituted genuine, informed, arm's length bargaining.  Accordingly, the court concludes that consideration of this factor also now weighs in favor of granting final approval of the settlement.

     5.     <u>Experience and Views of Counsel</u>

     Class counsel has filed a declaration in support of the pending motion for final approval, detailing the firm's extensive experience in litigating class actions, and explaining why this settlement is fair and reasonable in their view.  (Doc. No. 80-2.)  Based on their experience and qualifications, class counsel have concluded that this settlement is fair and reasonable.  Thus, consideration of class counsel's experience and expressed opinions in this regard also weighs in favor of final approval of the settlement.

     6.     <u>Reaction of the Class Members</u>

     The absence of objections to a proposed class action settlement supports the conclusion that the settlement is fair, reasonable, and adequate.  *See Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529 ("The absence of a single objection to the Proposed Settlement provides further support for final approval of the Proposed Settlement.") (citing cases); *Barcia v. Contain-A-Way, Inc.*, No. 07-cv-938-IEG-JMA, 2009 WL 587844, at *4 (S.D. Cal. Mar. 6, 2009).

     According to the declaration of Nathalie Hernandez, Operations Manager for ILYM, who serves as the settlement administrator in this case, no member of the class has filed an objection to the settlement pending before the court for final approval and no member of the class requested to be excluded from the settlement.  (Doc. No. 80-3 at ¶ 12.)  Similarly, no class members appeared at the final fairness hearing to raise any objections to the settlement.  Accordingly, consideration of this factor weighs significantly in favor of granting final approval.

     In sum, after considering all of the relevant factors, the court finds on balance that the settlement is fair, reasonable, and adequate.  *See* Fed. R. Civ. P. 23(e).  Thus, the court will grant

plaintiff's motion for final approval of the parties' class action settlement.

**ATTORNEYS' FEES/COSTS, INCENTIVE AWARD, AND ADMINISTRATOR COSTS**

Plaintiff has also filed a separate motion seeking an award of class counsel's fees and litigation expenses, an incentive award for plaintiff, and an award of settlement administrator costs to ILYM. (Doc. No. 81.)

**A.      Attorneys' Fees**

This court has an "independent obligation to ensure that the award [of attorneys' fees], like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). This is because, when fees are to be paid from a common fund, the relationship between the class members and class counsel "turns adversarial." *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010); *In re Wash. Pub. Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994). As such, the district court assumes a fiduciary role for the class members in evaluating a request for an award of attorneys' fees from the common fund. *In re Mercury*, 618 F.3d at 994; *see also Rodriguez v. Disner*, 688 F.3d 645, 655 (9th Cir. 2012); *West Publ'g Corp.*, 563 F.3d at 968.

The Ninth Circuit has approved two methods for determining attorneys' fees in such cases where the attorneys' fee award is taken from the common fund set aside for the entire settlement: the "percentage of the fund" method and the "lodestar" method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citation omitted). The district court retains discretion in common fund cases to choose either method. *Id.*; *Vu v. Fashion Inst. of Design & Merch.*, No. 14-cv-08822-SJO-EX, 2016 WL 6211308, at *5 (C.D. Cal. Mar. 22, 2016). Under either approach, "[r]easonableness is the goal, and mechanical or formulaic application of method, where it yields an unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002). The Ninth Circuit has generally set a 25 percent benchmark for the award of attorneys' fees in common fund cases. *Id.* at 1047–48; *see also In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any

'special circumstances' justifying a departure.").

Reasons to vary the benchmark award may be found when counsel achieves exceptional results for the class, undertakes "extremely risky" litigation, generates benefits for the class beyond simply the cash settlement fund, or handles the case on a contingency basis. *Vizcaino*, 290 F.3d at 1048–50; *see also In re Online DVD-Rental*, 779 F.3d at 954–55. Ultimately, however, "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. The Ninth Circuit has approved the use of lodestar cross-checks as a way of determining the reasonableness of a particular percentage recovery of a common fund. *Id.* at 1050 ("Where such investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable. Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted."); *see also In re Online DVD-Rental*, 779 F.3d at 955.

Here, the settlement provides that class counsel will seek an award of 25% percent of the settlement, equivalent to $177,618.33. (Doc. No. 81-1 at 4, 8.) The court approved plaintiff's request for attorneys' fees on a preliminary basis, finding that the requested fee amount of $177,618.33 was reasonable based upon the benchmark percentage in this circuit. (Doc. No. 73 at 15; 76 at 4.) No class member has objected to any part of the settlement, including the amount of attorneys' fees sought. (Doc. No. 80-3 at ¶ 12.) The court also previewed that it would make a final determination on the reasonableness of the requested fee amount by performing a lodestar cross-check. (Doc. No. 73 at 15; 76 at 4.)

The court now conducts a lodestar cross-check to confirm whether a 25 percent award of attorneys' fees is appropriate here. Where, as here, a lodestar is merely being used as a cross-check, the court "may use a 'rough calculation of the lodestar.'" *Bond v. Ferguson Enters., Inc.*, No. 1:09-cv-1662-OWW-MJS, 2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011) (quoting *Fernandez v. Victoria Secret Stores, LLC*, No. 06-cv-04149-MMM-SHx, 2008 WL 8150856 (C.D. Cal. July 21, 2008)). Moreover, beyond simply the multiplication of a reasonable hourly rate by the number of hours worked, a lodestar multiplier is often applied. "Multipliers in the 3–4

15

range are common in lodestar awards for lengthy and complex class action litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (citing *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988)); *see also* 4 Newberg on Class Actions § 14.7 (stating courts typically approve percentage awards based on lodestar cross-checks of 1.9 to 5.1 or even higher, and "the multiplier of 1.9 is comparable to multipliers used by the courts"); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998) ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.") (quoting 4 Newberg on Class Actions § 14.7).

Here, class counsel asserts that 358.5[3] hours of attorney time were expended in litigating this case to date, noting that "[t]hese hours do not include all the time [the] firm will expend to bring this Class Action to a conclusion." (Doc. Nos. 81-1 at 9; 81-2 at ¶¶ 6–8, 4 n.3; Ex. 2.) Counsel states that if the court were to calculate their lodestar using counsel's customary hourly rates that the total amount would be $208,760,[4] greater than the amount they are seeking to be awarded, $177,618.33. (Doc. No. 80-2 at ¶ 7.)

Class counsel represents that the hours spent by each respective timekeeper using his firm's rates is summarized as follows:

| Timekeeper | Hours | Billable Rate | Lodestar |
| --- | --- | --- | --- |
| Brian D. Case, Managing Partner | 13.2 | $850 | $11,220 |
| Jerusalem F. Beligan, Senior Attorney | 233.6 | $750 | $175,200 |
| Javier R. Ruiz, Paralegal | 111.7 | $200 | $22,340 |
| **TOTAL** | **358.5** | | **$208,760** |

Class counsel assert that these rates are reasonable and have been approved by courts in this Circuit and by other courts. (Doc. Nos. 81-1 at 9; 81-2 at ¶ 6.) With the exception of

---

[3] The court notes that this total is based on the court's addition of the hour totals in the chart counsel provided (Doc. No. 81-2 at ¶ 7) rather than the number listed as the total in the chart, which appears to contain a slight mathematical error.

[4] Similarly, the court notes that this total is based on the court's addition of the lodestar totals supplied by counsel (Doc. No. 81-2 at ¶ 7) rather than the number listed as the total in the chart, which appears to contain a slight mathematical error.

16

attorney Case, whose requested hourly rate is slightly higher than others that have been approved in similar class action settlements in Eastern District of California cases, the undersigned has previously accepted similar hourly rates as reasonable for lodestar cross-check purposes. *See Singh v. Roadrunner Intermodal Servs., LLC*, No. 1:15-cv-01497-DAD-BAM, 2019 WL 316814, at *10 (E.D. Cal. Jan. 24, 2019) (accepting hourly rates of between $370 and $495 for associates, and $545 and $695 for senior counsel and partners); *Mathein v. Pier 1 Imports (U.S.), Inc.,* No. 1:16-cv-00087-DAD-SAB, 2018 WL 1993727, at *11 (E.D. Cal. Apr. 27, 2018) (accepting hourly rates of between $475 and $575 for associates, and $675 and $750 for senior counsel and partners); *Emmons v. Quest Diagnostics Clinical Labs., Inc.*, 1:13-cv-00474-DAD-BAM, at *8 (E.D. Cal. Feb. 27, 2017) (accepting hourly rates of between $330 and $550 for associates, and $500 and $720 for partners). Here, because the amount for attorneys' fees being requested is below the lodestar cross-check amount and because attorney Case's hours represent such a small percentage of the total hours, the court adopts the hourly rates provided by class counsel for lodestar cross-check purposes as appropriate.[5]

Additionally, counsels' declarations are sufficient to establish the number of attorney and staff hours worked on this matter. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 264 (N.D. Cal. 2015) ("[I]t is well established that '[t]he lodestar cross-check calculation need entail neither mathematical precision nor bean counting . . . [courts] may rely on summaries submitted by the attorneys and need not review actual billing records.'") (quoting *Covillo v. Specialtys Café*, No. 11-cv-00594-DMR, 2014 WL 954516 (N.D. Cal. Mar. 6, 2014)). Here, combining the hours counsel represented they spent on the case with the applicable hourly rate, the lodestar base figure here is $208,760. To reach the amount of $177,618.33 in fees that class counsel has requested here, a negative multiplier of approximately 0.85 would be applied to that lodestar.[6]

---

[5] Since these hourly rates are used solely for the purpose of cross-checking the percentage of the common fund to be awarded as attorneys' fees, the court need not precisely define the appropriate rates for this district.

[6] Indeed, even if the court were to adjust attorney Case's hourly rate to $750, the lodestar base figure here would be $207,440, and to reach the amount of $177,618.33 in fees that class counsel has requested here, a negative multiplier of approximately 0.86 would be applied to that lodestar.

For the reasons set forth above, the court concludes that the lodestar cross-check supports the requested award of $177,618.33 in attorneys' fees, an amount equal to 25% of the total fund in this case.

**B.      Expenses of Class Counsel**

Additionally, class counsel seeks to recover the costs expended on this litigation.  Expense awards "should be limited to typical out-of-pocket expenses that are charged to a fee paying client and should be reasonable and necessary."  *In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007).  These can include reimbursements for:  "(1) meals, hotels, and transportation; (2) photocopies; (3) postage, telephone, and fax; (4) filing fees; (5) messenger and overnight delivery; (6) online legal research; (7) class action notices; (8) experts, consultants, and investigators; and (9) mediation fees."  *Id.*

Here, class counsel requests reimbursement of their actual expenses in the amount of $20,000.[7]  (Doc. Nos. 80-1 at 14; 81-1 at 10; 81-2 at ¶ 9, Ex. 3.)  The court has reviewed class counsel's declaration, which attests to the costs the firm incurred in connection with the pursuit of this litigation, and finds all the expenses incurred to be quite reasonable.  Accordingly, the court will approve their reimbursement of expenses in the amount requested.

**C.      Incentive Award**

"Incentive awards are fairly typical in class action cases."  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009).  However, the decision to approve such an award is a matter within the court's discretion.  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000).  Generally speaking, incentive awards are meant to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *Rodriguez*, 563 F.3d at 958–59.  The Ninth Circuit has emphasized that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the

_____

[7]  As noted above, class counsel states that the full amount of costs incurred representing the class was $22,389.43, but they voluntarily seek reimbursement for only $20,000 in expenses.  (Doc. Nos. 81-1 at 4; 81-2 at ¶ 5.)

adequacy of the class representatives . . . . [C]oncerns over potential conflicts may be especially pressing where, as here, the proposed service fees greatly exceed the payments to absent class members." *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (internal quotation marks and citation omitted). A class representative must justify an incentive award through "evidence demonstrating the quality of plaintiff's representative service," such as "substantial efforts taken as class representative to justify the discrepancy between [her] award and those of the unnamed plaintiffs." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. 2008). Incentive awards are particularly appropriate in wage-and-hour actions where a plaintiff undertakes a significant "reputational risk" by bringing suit against their former employers. *Rodriguez*, 563 F.3d at 958–59. The district court must evaluate such awards individually, using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." *Staton*, 327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

In the Ninth Circuit, courts typically find an incentive award of $5,000 to be "presumptively reasonable." *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 457, 463 (9th Cir. 2000) (endorsing $5,0000 service awards to named representatives); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 246 (N.D. Cal. 2015) (collecting cases); *In re Toys R Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 470–72 (C.D. Cal. 2014) (awarding plaintiffs $5,000 each "consistent with the amounts courts typically award as incentive payments"). Higher incentive award amounts can be appropriate, such as in employment actions, where a plaintiff risks retaliation or blacklisting by bringing suit against her employer. *See, e.g.*, *Buccellato v. AT&T Operations, Inc.,* No. C10-00463-LHK, 2011 WL 4526673, at *4 (N.D. Cal. June 30, 2011).

Here, plaintiff Sanchez seeks an incentive award of $7,500 for his service as a class representative in this action. (Doc. No. 81-1 at 10–11.) In support of this request, plaintiff Sanchez asserts that he has worked diligently with class counsel throughout the lengthy litigation

of this case, suffered emotional and mental stress, and risked job opportunities by bringing suit against defendant.  (Doc. Nos. 20-7; 41-9; 43-9; 67-1 at 24; Sanchez Decl. at ¶ 25; 81-1 at 10.) As the court indicated in its order granting preliminary approval of the settlement, the incentive award sought by plaintiff Sanchez is somewhat higher than the average recovery amount of individual class members, but an incentive award of $7,500 amounts to approximately only 1 percent of the overall settlement amount of $710,473.33.  (Doc. No. 73 at 16–17.)  In recognition of the significant time and effort plaintiff spent assisting in the litigation of this case, the court finds this incentive payment is fair and does not destroy the adequacy of class representation in this case.

Accordingly, the court will award $7,500 to plaintiff Sanchez as an incentive payment.

**D.      Settlement Administrator Costs**

The court previously approved the appointment of ILYM as the settlement administrator. (Doc. Nos. 73 at 8–9, 22; 76 at 6.)  According to the declaration of Nathalie Hernandez, Operations Manager for ILYM, the total cost for administration of this settlement, including fees incurred and future costs for completion, is $10,000.00.  (Doc. No. 80-3 at ¶ 16.)  The court finds these administration costs reasonable and will direct payment in the requested amount.

## CONCLUSION

For all of the reasons stated above:

1.      Plaintiff's motion for final approval of the class action settlement (Doc. No. 80) is granted, and the court approves the settlement as fair, reasonable, and adequate;

2.      Plaintiff's motion for an award of attorneys' fees and costs, a class action representative incentive award, and settlement administrator costs (Doc. No. 81) is granted, and the court awards the following sums:

a.      Class counsel shall receive $177,618.33 in attorneys' fees and $20,000 in expenses;

b.      Plaintiff Sanchez shall receive $7,500.00 as an incentive payment; and

c.      ILYM Group, Inc., shall receive $10,000.00 in settlement administration costs;

3.  The parties are directed to effectuate all terms of the settlement agreement and any deadlines or procedures for distribution set forth therein;

4.  This action is dismissed with prejudice in accordance with the terms of the parties' amended settlement agreement, with the court specifically retaining jurisdiction over this action for the purpose of enforcing the parties' settlement agreement; and

5.  The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:  **May 5, 2021**

_____
UNITED STATES DISTRICT JUDGE